REVISED JULY 17, 2001

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-10556
_____

IRMA JEAN JAMES; TERRI LARY

Plaintiffs - Appellees

v.

CITY OF DALLAS TEXAS; ET AL
CITY OF DALLAS TEXAS; US DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT

Defendants - Appellants

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

June 18, 2001

Before KING, Chief Judge, and ALDISERT[*] and BENAVIDES, Circuit
Judges.

KING, Chief Judge:

Defendants-Appellants the City of Dallas, Texas and the

United States Department of Housing and Urban Development bring

this interlocutory appeal, pursuant to 28 U.S.C. § 1292(b),

challenging the district court's Rule 23(b)(2) certification of a

"Race Discrimination Class" and a "Process Class" in a class

_____

[*]   Circuit Judge of the Third Circuit, sitting by
designation.

action lawsuit involving alleged racially discriminatory demolition of repairable single-family homes without proper notice or judicial warrant. Because we determine that the named Plaintiffs do not have standing to seek the relief requested for the "Race Discrimination Class," we VACATE the district court's certification of that class and REMAND with instructions to dismiss all the Race Discrimination Class claims against the City and HUD and to dismiss HUD from the lawsuit. Because we determine that the named Plaintiffs do have standing to seek the relief requested for seven of their twelve Process Class claims against the City and we determine further that the district court did not abuse its discretion in certifying the "Process Class," we AFFIRM AS MODIFIED the district court's certification of that class. Finally, because we determine that the named Plaintiffs do not have standing to seek the relief requested for five of their Process Class claims, we REMAND with instructions to dismiss those claims.

## I. FACTUAL BACKGROUND

This case arises out of a proposed class action lawsuit against Defendants-Appellants the City of Dallas, Texas (the "City") and the United States Department of Housing and Urban Development ("HUD"). Plaintiffs-Appellees, Irma Jean James and Terri Lary (collectively referred to as the "named Plaintiffs" or

2

"Plaintiffs"), assert two claims against the City: first, a Process Class claim charging that the City demolished "repairable" single-family homes in predominantly minority neighborhoods without proper notice, in violation of due process under the Fifth and Fourteenth Amendments, and without a warrant, in violation of the Fourth Amendment;[1] and second, a Race Discrimination claim charging that the City has implemented this "no-notice" demolition program of repairable minority housing because of the race of the occupants or the race of the owners of the property, in violation of 42 U.S.C. §§ 1981, 2000d, 3604(a), 5301(b)(2), and 5309. Plaintiffs assert one Race Discrimination Class claim against HUD, charging that HUD was aware of the City's purposeful discrimination and that the City used HUD funds to implement its program, in violation of 42 U.S.C. §§ 1981, 2000d, 3604(a), 3608(e)(5), and the Fifth Amendment. Further, Plaintiffs assert that this discrimination is directly traceable to HUD's use of explicit racial classification of neighborhoods.

### A. Factual Circumstances of the Named Plaintiffs

Irma Jean James is one of the two named Plaintiffs. She is an African-American woman who owned a single-family residence located at 2404 Alabama Avenue in the Oak Cliff area of the City.

---

[1] Both claims were brought pursuant to 42 U.S.C. § 1983.

3

The Oak Cliff area has a population that is 68% "black"[2] according to the 1990 Census.  James resided in the home from 1969 to 1981, and then family members or other tenants resided in the building until 1993.  The building became vacant in 1994.

The Dallas Urban Rehabilitation Standards Board ("URSB") assessed her house to be repairable and not a nuisance; however, URSB still proceeded with a demolition order against it.  As part of the demolition process, the URSB held a hearing concerning the demolition of the house.  The hearing revealed that the tax assessment value of the property was $12,480, that the repair cost of the house would have been $42,416, and that the cost of demolition was $2,569.  City inspectors provided information that numerous code violations existed on the property.

James was not provided with notice of the URSB proceedings concerning the property.  At the time of the hearings, James resided in Duncanville, a suburb of Dallas.  In 1992, a URSB notice was sent to the vacant Alabama Avenue address, which was returned by the post office as undeliverable.  Also in 1992, the URSB order for repair and demolition was sent to James at an address on Zeb Street in Dallas.  Neither James nor anyone associated with James has ever lived on Zeb Street.  This order was also returned to the URSB as being undeliverable.  The City mailed the final default demolition order to the same Zeb Street

_____

[2]   The term "black" is the designated racial classification adopted by the United States Census.

4

address.  Throughout these years, James paid her property taxes for the property through her mortgage company.  She did not own any other property in the City.  The City demolished the house in February 1994 and placed a lien on the property for the costs of demolition.

The second named plaintiff is Terri Lary, an African-American woman who owned a single-family residential house located at 3902 Coolidge Street, Dallas.  The property is in a census tract that is 98.5% black.  The City classified the house as repairable.

The URSB conducted a hearing concerning the Lary property. The tax assessment of the property was $7,380, with the estimated costs of repair at $16,332.50 and demolition costs to run $837.21.  Notice of the hearing was sent to an incorrect address; however, Lary did receive actual notice of the hearing and appeared at the proceedings.  URSB issued a repair order with a default to demolish the structure if repairs were not adequately completed.  Lary made some of the requested repairs.  According to the City, Lary failed to obtain the necessary permits required for the repairs and failed to complete the repairs.  URSB sent a default notice to the same wrong address and to the house itself. The postal service returned both notices.  Lary did not receive final notice that she was in default of the repair order or notice that the City intended to demolish the house.  During this

time, she was living at another address in Dallas.  In 1995, the City demolished the house.

## B. Factual Background of Class Claims

The facts underlying the Process Class claims, as alleged by Plaintiffs, are that between 1992 and 1996, the City demolished 580 repairable single-family homes without providing adequate notice to the owners.  According to Plaintiffs, all 580 homes were demolished without a warrant or other judicial process.

The facts underlying the Racial Discrimination Class claims are more complicated.  For purposes of class certification, the district court adopted the findings of fact asserted by Plaintiffs.  These findings purport to show that the City considered the race of the occupants of the area or the race of the property owner in deciding whether to demolish an otherwise repairable house.[3]  The district court found:

> Plaintiffs' documentary evidence shows that the current pattern of demolitions of repairable single-family homes in predominantly black areas is consistent with and traceable to the City's past use of overt racial classifications to determine the treatment accorded to different neighborhoods. The present pattern of single-family demolitions continues the targeting of predominantly black neighborhoods begun at the inception of the HUD and the City's CDBG [Community Development Block Grant] code enforcement and demolition

_____

[3]    For purposes of class certification, the district court adopted extensive statistical and documentary evidence submitted by Plaintiffs showing racially discriminatory actions of the City that affected municipal and housing services in minority neighborhoods.  See James v. City of Dallas, No. CA398CV436R, 2000 WL 370670, at *2-*9 (N.D. Tex. Apr. 11, 2000).

6

program in the mid-1970's.  This program was initiated in tandem with the City and HUD's social engineering of neighborhood service delivery based on overt racial classifications at the inception of the CDBG program.

In short, the facts put forth by Plaintiffs demonstrate that the City allegedly used overt racial classifications to determine the neighborhoods in which the URSB would focus its demolition activities.[4]  Further, Plaintiffs argue that the City demolished repairable single-family homes located in predominately black census tracts at a much higher rate than in comparable white census tracts.  HUD allegedly approved of and financed this discriminatory demolition.

## II. PROCEDURAL BACKGROUND

In February 1998, James filed a suit for damages against the City and the administrator of the URSB alleging violations of due process and the Fourth Amendment and also raised a discrimination

---

[4]  For purposes of class certification, the district court found that HUD distributed manuals to cities that received CDBG funding, including the City of Dallas, and that these manuals utilized explicit racial classifications.  For example, a HUD-distributed manual entitled "The Dynamics of Neighborhood Change" rated communities as "Healthy" or "Clearly Declining" based in part on the percentage and migration of minority occupants.  This HUD manual, which allegedly is still being distributed, defines a "Clearly Declining" community as undergoing a change involving a "Decrease in White Move-Ins" and "More Minority Children in Schools."  Other studies used by HUD and the City also include overt racial classifications.  The district court adopted Plaintiffs' assertions that the City planned its housing based on race-based criteria and also focused its code enforcement and demolition based on this same racial criteria.  The factual basis for these assertions are amply detailed in the district court's Memorandum Opinion.  See James, 2000 WL 370670, at *2-*9.

7

claim. In November 1998, James amended her complaint as a Rule 23(b)(2) class action. The amended complaint dropped the suit against the URSB administrator, added Lary as a named plaintiff, and added HUD as a defendant.

Plaintiffs requested injunctive relief against the City and HUD on behalf of the class members. Plaintiffs sought a permanent injunction against the City, requesting that the City (1) cancel the debt assessed for demolition costs and associated fees/interest, and file notice in the public deed record that the debt was cancelled, (2) file a release of the demolition lien in the public deed records, (3) ensure that title is clear on the property, (4) ensure that all City records concerning the property show the debt cancelled, (5) refrain from taking any steps to enforce the lien or collect the debt, (6) return money paid with interest by class members for money paid for demolition and related costs, (7) set aside all foreclosures based on demolition liens against the property, (8) refrain from foreclosures based on demolition liens, (9) refrain from retaliatory action such as refusing to issue building permits, (10) cease demolition of repairable structures in African-American areas or structures that are owned by African-Americans, and (11) cease demolition of repairable structures without adequate notice and due process.

Further, the Plaintiffs sought a permanent injunction directed against the City and HUD to provide "each class member

with clear title to a comparable replacement single-family housing unit or enter equivalent injunctive relief."[5]

The district court granted Plaintiffs leave to file a Third Amended Complaint.[6] In addition to the above sought relief, this Third Amended Complaint requests the following: (1) a permanent injunction requiring HUD to administer all of its housing programs in a manner that will eradicate the effects of HUD's discriminatory demolition practices; (2) a permanent injunction against the City and HUD prohibiting use of overt racial stereotypes in the classification of neighborhoods for purposes of housing demolition activities; (3) a permanent injunction against the City and HUD prohibiting use of overt racial stereotypes in the classification of neighborhoods that have a discriminatory effect on the conditions of predominantly black census tracts; (4) a permanent injunction requiring the City and HUD to implement a court-approved plan to eliminate the effects of the City's and HUD's discrimination; (5) a permanent

---

[5] The Plaintiffs also sought alternative relief under Federal Rule Civil Procedure 23(b)(3) for damages if the injunctive relief was not available. This alternative relief was sought only against the City and not HUD. Because the district court did not certify the class under Rule 23(b)(3), we do not address the possibility of certifying the class on an alternate ground.

[6] The Third Amended Complaint was submitted on September 25, 2000, after the district court had certified the class. Both the City and HUD apparently agree that the modified requests included in the Third Amended Complaint are properly before this court.

injunction prohibiting continued HUD funding for the City's housing code enforcement in predominantly black census districts until a court-approved plan is put into effect; and (6) a permanent injunction requiring HUD to establish, maintain, and use a monitoring system to determine whether the City is discriminating in its housing demolition activities.

On April 4, 2000, the district court held a certification hearing and granted Plaintiffs' motion for class certification pursuant to Federal Rule Civil Procedure 23(b)(2). The following classes were conditionally certified by the district court:

(1) Process Class: a Rule 23(b)(2) class composed of all property owners who had a repairable[7] single-family structure demolished by the City of Dallas' Urban Rehabilitation Standards Board ("URSB"): (i) and the City demolished the structure without providing the property owner notice of the opportunity to contest the proposed demolition at a hearing prior to the issuance of the order causing the demolition, (ii) and whose structure was demolished without a warrant.[8] This class includes those

---

[7] The district court defined "repairable" as a single-family house which meets at least one of the following criteria:

a) the estimated or actual costs of repair was equal to or less than the property tax assessed value of the structure or equal to or less than actual market value,
b) there is no certification in the URSB file that the structure is non-repairable,
c) the City code enforcement URSB referral recommends that the URSB order repairs,
d) the URSB staff recommendation to the URSB is that the URSB order repairs, or
e) the URSB ordered repairs to the structure.

[8] The district court certified the classes before this court decided Freeman v. City of Dallas, 242 F.3d 642 (5th Cir. 2001) (en banc). In Freeman, this court addressed a Fourth Amendment challenge to the City of Dallas's warrantless seizure

10

owners who [sic] structures were demolished pursuant to a default demolition order.

(2) <u>Race Discrimination Class</u>: a Rule 23(b)(2) class composed of all persons who share the following characteristics: (i) owners of at least one parcel of real property on which a single-family structure was placed, (ii) and which single-family structure was a repairable single-family structure that was demolished pursuant to a City URSB order, (iii) and either the owner is African-American or the repairable single-family unit demolished pursuant to the City URSB order was located in a predominately black census tract that was 50% or more non-Hispanic black according to the 1990 U.S. census.

The City and HUD timely appeal the grant of class certification.

## III. STANDARD OF REVIEW

"We review a district court's class certification decisions for abuse of discretion." <u>Pederson v. La. State Univ.</u>, 213 F.3d 858, 866 (5th Cir. 2000). "[T]he district court maintains great discretion in certifying and managing a class action. We will reverse a district court's decision to certify a class only upon a showing that the court abused its discretion, or that it applied incorrect legal standards in reaching its decision." <u>Mullen v. Treasure Chest Casino, LLC</u>, 186 F.3d 620, 624 (5th Cir. 1999) (citations omitted). "Whether the district court applied

---

and destruction of buildings as urban nuisances. <u>See</u> <u>id.</u> at 654. The court held that the seizure of buildings designated "nuisances" pursuant to established and non-arbitrary police power procedures was not rendered per se unreasonable by the city's failure to obtain a warrant to enforce a demolition order. <u>See</u> <u>id.</u> As currently formulated, the Process Class does not reflect the considerations necessitated by <u>Freeman</u>. On remand, the district court will be required to evaluate the effect of <u>Freeman</u> on the Process Class.

11

the correct legal standard in reaching its decision on class certification, however, is a legal question that we review <u>de novo</u>." <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d 402, 408 (5th Cir. 1998).

## IV. ARTICLE III STANDING

We first address the named Plaintiffs' standing to bring this class action suit. "Jurisdictional questions are questions of law, and thus reviewable <u>de novo</u> by this Court." <u>Pederson v. La. State Univ.</u>, 213 F.3d 858, 869 (5th Cir. 2000) (citations omitted). The City and HUD assert that the named Plaintiffs do not have standing to bring either their Process Class claims or their Race Discrimination Class claims. The district court did not address this issue. However, because standing goes to the constitutional power of a federal court to entertain an action, this court has a duty to address it. <u>See</u> <u>Bertulli v. Indep. Ass'n of Cont'l Pilots</u>, 242 F.3d 290, 294 (5th Cir. 2001); <u>see also</u> <u>Pederson</u>, 213 F.3d at 866 n.5.[9]

---

[9]  In cases in which statutory standing is involved, we may address statutory standing before Article III standing. <u>See</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 97 (1998) (suggesting that "a statutory standing question can be given priority over an Article III question"). In <u>Ortiz v. Fibreboard Corp.</u>, the Supreme Court addressed this issue in the context of class certification:

> Ordinarily, of course, this or any other Article III court must be sure of its own jurisdiction before getting to the merits. But the class certification issues are, as they were in <u>Amchem[ Products, Inc. v. Windsor</u>, 521 U.S. 591,

12

Standing is a jurisdictional requirement that focuses on the party seeking to get his or her complaint before a federal court and not on the issues he or she wishes to have adjudicated. See Pederson, 213 F.3d at 869. "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." Sosna v. Iowa, 419 U.S. 393, 403 (1975). If the litigant fails to establish standing, he or she may not seek relief on behalf of himself or herself or any other member of the class. See O'Shea v. Littleton, 414 U.S. 488, 494 (1974).

The Supreme Court has recognized three requirements of Article III standing:

It is by now well settled that "the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'-- an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of. . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

612-13 (1997)], "logically antecedent" to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing. Thus the issue about Rule 23 certification should be treated first, "mindful that [the Rule's] requirements must be interpreted in keeping with Article III constraints."

527 U.S. 815, 831 (1999); see also Amchem, 521 U.S. at 612-13; Pederson, 213 F.3d at 866 n.5. In this case, we address Article III standing first.

13

United States v. Hays, 515 U.S. 737, 742-43 (1995) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). For injunctions, an additional inquiry is required, namely that Plaintiffs show that they are likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury. See City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) ("'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.'" (quoting O'Shea, 414 U.S. at 495-96)); see also Pederson, 213 F.3d at 869 ("Additionally, courts have refused to adjudicate cases that raise only generalized grievances."). However, if the injury is accompanied by "any continuing, present adverse effects," standing for injunctive relief can be found. Lyons, 461 U.S. at 102 (internal quotations omitted) (quoting O'Shea, 414 U.S. at 495-96); see also Soc'y of Separationists, Inc. v. Herman, 959 F.2d 1283, 1285 (5th Cir. 1992) ("To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future.").

Both standing and class certification must be addressed on a claim-by-claim basis. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 105 (1998); Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc., 528 U.S. 167, 185 (2000); Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 976 (5th Cir. 2000). In addition, at least one named Plaintiff must have standing to seek

14

injunctive relief on each of the claims against the City and HUD. See Griffin v. Dugger, 823 F.2d 1476, 1483 (11th Cir. 1987). We turn first to determine whether Article III standing exists to support the claim for injunctive relief sought on behalf of the Process Class against the City. Then, we examine whether Article III standing exists to support the claim for injunctive relief sought on behalf of the Race Discrimination Class brought against the City and HUD.

### A. Standing for Process Class Claims Against the City

Plaintiffs' Process Class claims are directed solely against the City. The named Plaintiffs argue that the ongoing effects of the demolition of their repairable homes present continuing and adverse effects to their property, and that the injunctive remedies sought will directly redress those ongoing effects. The named Plaintiffs point to the fact that the City has imposed a collectible debt on Plaintiffs for costs, filing fees, and expenses arising from the demolition and that this debt incurs ongoing interest charges. Further, the named Plaintiffs point to the continued liens the City holds on their properties, which affects title to the properties and the named Plaintiffs' credit ratings. Finally, the named Plaintiffs allege that impending foreclosures, enforcement actions, and collection actions based on the demolition liens are imminent injuries that continue to affect them personally and also affect the class as a whole.

15

The above allegations are sufficient to prove an "actual" and "imminent" "injury in fact" to the named Plaintiffs. See Lujan, 504 U.S. at 560-61. The ongoing effect, which allegedly burdens the Plaintiffs' ownership of property, is personal and invades a legally protected interest. See Pederson, 213 F.3d at 871 ("As a general matter, injury in fact is the invasion of a legally protected interest." (internal quotations omitted)). The continued threat of collection actions or foreclosures by the City based on the unpaid debt also suffices to demonstrate the likelihood of real and immediate future injury. See O'Shea, 414 U.S. at 494.

In addition, there is little doubt that the named Plaintiffs have established the "causal connection" element of Article III standing for their Process Class claims against the City. Causation requires that the injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." La. ACORN Fair Hous. v. LeBlanc, 211 F.3d 298, 304 (5th Cir. 2000) (internal quotations omitted) (quoting Lujan, 504 U.S. at 561). It was the City's action of demolishing the named Plaintiffs' homes, allegedly without adequate notice, that led to the continued injury of liens, debt, and an infringement on a legally protected interest. As such, the burdens placed on the named Plaintiffs' property are fairly traceable to the actions of the City.

16

Under the third requirement of Article III standing, Plaintiffs must show that it is "likely, as opposed to merely speculative, that the injury will be redressed in a favorable decision." Id. (quoting Lujan, 504 U.S. at 561). In Plaintiffs' Prayer for Relief, they request twelve permanent injunctions directed at remedying the alleged due process violations by the City. Of those twelve requests, seven[10] of the proposed injunctions could likely remedy the alleged continuing injury and thus provide the requisite Article III redressability for the Process Class.

However, also in their requests for permanent injunctions, the named Plaintiffs have asked for several injunctive remedies that will not redress the particular injuries they allege. The requests by the named Plaintiffs that the City cease demolitions of repairable structures that are owned by African Americans or that are situated in African-American areas, and cease demolitions without adequate notice do not redress their stated injury. Because neither of the named Plaintiffs owns un-demolished property in the City that would be subject to the

---

[10] Specifically, Plaintiffs request permanent injunctions that the City (1) cancel the debt assessed for demolition costs and associated fees/interest and file notice in the public deed record that the debt was cancelled, (2) file a release of the lien in the public deed records, (3) ensure that title is clear on the property, (4) ensure that all City records concerning the property show the debt cancelled, (5) refrain from taking any steps to enforce the lien or collect the debt, (6) refrain from foreclosures based on demolition liens, and (7) refrain from retaliatory action such as refusing to issue building permits.

17

proposed injunctions, the named Plaintiffs cannot demonstrate that this requested relief will offer them redress.  Should the City cease all no-notice demolitions of single-family repairable homes, the named Plaintiffs will not be protected from future injury.  Further, the named Plaintiffs have not demonstrated that they will purchase or occupy a repairable single-family home in a black census tract in the near future.  See Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 211 (1995) (requiring an "adequate showing" that Adarand would be involved in the bidding process that implicated the injunctive relief sought).  Therefore, these two named Plaintiffs cannot demonstrate that they have standing to request that the City cease future demolitions of repairable structures.

In the same manner, these two named Plaintiffs do not have standing to seek the return of money and interest paid for demolition costs, because they have not alleged that they, in fact, paid any money for demolition costs.  These named Plaintiffs also do not have standing to request the City set aside all foreclosures based on demolition liens, because neither Plaintiff has alleged that her property was foreclosed upon.

In addition, the named Plaintiffs' request for an injunction granting them clear title to a "comparable replacement home"[11]

---

[11]  Because Plaintiffs did not specify whether this injunctive request runs to the Process Class or to the Race Discrimination Class, we address the request separately for each class.

18

will not necessarily redress the decrease in value of their properties, which presumably will remain vacant.  Plaintiffs are not requesting that the City and HUD rebuild their demolished homes on the particular lots they own — an act that arguably would increase the value of their property.  Instead, they are requesting a replacement home somewhere else in the City of Dallas.  Unlike the other "continuing injuries" potentially redressed by the sought-after injunctive relief listed in footnote 10 <u>supra</u>, the provision of a comparable house does not target the continuing effects of the lack of due process on their properties and, instead, is more properly considered a request for compensatory damages.[12]  As the Supreme Court in <u>Lyons</u> recognized, standing to assert a claim for damages to redress past injury may not always give rise to standing for injunctive relief.  <u>See</u> <u>Lyons</u>, 461 U.S. at 102.  Therefore, the named Plaintiffs lack standing for these portions of their Process Class claims.

As such, we conclude that the named Plaintiffs of the Process Class do not have Article III standing to request an injunction to cease demolition of repairable structures owned by African Americans or that are located in predominantly African-American areas or to request comparable housing.  The named

---

[12]  Our conclusion is based, in part, on the fact that the alleged injury is no more "continuing" than a generic damages action for which it is possible to seek compensatory damages, including past and future pecuniary loss.

19

Plaintiffs do, however, have Article III standing to bring the remainder of their Process Class claims.[13]

### B. Standing for Race Discrimination Claims

### Against the City and HUD

Plaintiffs allege that the City and HUD have engaged in a practice of racially discriminatory housing demolition, the effects of which continue to affect the named Plaintiffs' property. The named Plaintiffs allege that because the City and HUD utilized overt racial categories in the classification of neighborhoods for purposes of conducting demolition-related activities, they can demonstrate ongoing economic injury for the class based on racial discrimination. Specifically, they allege that the effects of this racial discrimination, which has resulted in the demolition of a disproportionate number of single-family houses in minority census districts, continues to perpetuate racial segregation in those neighborhoods, and continues to depreciate the value of their property by reducing the marketability of those neighborhoods and by discouraging public and private investment.

The City and HUD argue that because the named Plaintiffs do not presently own any un-demolished residential houses in the City subject to future racial discriminatory action by the City or HUD, the named Plaintiffs cannot demonstrate the "likelihood

---

[13]  See supra note 10.

of substantial and immediate irreparable injury," O'Shea, 414 U.S. at 502, or a continued effect on their properties.  We conclude that because the named Plaintiffs cannot demonstrate that any of their requested relief will redress the alleged injury, these named Plaintiffs do not have Article III standing for the Race Discrimination Class claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 105 (1998) (finding that because none of the requested relief would remedy the alleged injury, plaintiffs did not have Article III standing); see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc., 528 U.S. 167, 185 (2000) (recognizing that "a plaintiff must demonstrate standing separately for each form of relief sought").[14]

At the outset, it is important to focus on the precise injury alleged by the named Plaintiffs.  In this class action, the named Plaintiffs are not claiming an injury based on past

---

[14]  As is evident in the discussions on redressability in Laidlaw and Steel Co. some difference exists as to the appropriate degree of scrutiny that federal courts must give to the redressability prong of Article III standing.  See Laidlaw, 528 U.S. at 185; id. at 202 (Scalia, J., dissenting); Steel Co., 523 U.S. at 105; id. at 124 (Stevens, J., dissenting); cf. Larson v. Valente, 456 U.S. 228, 243 n.15 (1982) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself.  He need not show that a favorable decision will relieve his every injury."); Cramer v. Skinner, 931 F.2d 1020, 1028 (5th Cir. 1991).  We make no judgment as to the appropriate degree of scrutiny required to analyze Article III redressability in other cases, but as will be discussed infra in the text, conclude that none of the injunctions requested by the named Plaintiffs will redress the personal injury claimed by these Plaintiffs.

21

damages due to demolition of their homes, nor are they claiming that they fear imminent demolition of future homes. Instead, these named Plaintiffs allege that the pattern of racial discrimination in housing demolition and enforcement throughout the City has decreased the value of their particular properties and the surrounding neighborhoods and thus demonstrates that a continuing, present adverse effect from racial discrimination exists. See Lyons, 461 U.S. at 102. In so framing their claim, the named Plaintiffs steer a course between a damages action for which they might have standing, but which would undermine their Rule 23(b)(2) injunctive status, and a pure prospective injunction that would enjoin the City and HUD from demolishing other homes in the future, but that would undermine standing for these named Plaintiffs who do not own other homes in the City.

Despite this careful framing of the issue, on the facts before us, the named Plaintiffs cannot demonstrate that it is "likely" "that the continuing injury will be redressed in a favorable decision." Lujan, 504 U.S. at 561; see also Steel Co., 523 U.S. at 105. Our decision turns on the narrowness of the named Plaintiffs' claimed continuing injury, and the broad relief requested that does not address the particular injury suffered by these two Plaintiffs. The named Plaintiffs' requested injunctive relief simply does not redress the continuing devaluation of their particular lots of property and neighborhoods because of racially discriminatory demolitions taking place in all parts of

22

the City.[15]  See Steel Co., 523 U.S. at 107 ("Relief that does
not remedy the injury suffered cannot bootstrap a plaintiff into
federal court; that is the very essence of the redressability
requirement.").[16]  Because the named Plaintiffs do not allege
that they will suffer future injury from the alleged city-wide
racially discriminatory demolitions, they are left with a
difficult argument of demonstrating how the requested injunctive
relief will redress the on-going economic effects on their
already demolished homes and individual pieces of property.

As stated in the previous section, the named Plaintiffs'
request for clear title to comparable housing in another part of
Dallas will not redress the continuing adverse economic effects
on their particular properties or neighborhoods.  Because
Plaintiffs fail to link their request for replacement housing to
how it will redress the injury they have alleged to their
particular properties, they cannot demonstrate Article III
standing for their request.

---

[15]  For the purposes of this opinion, we assume the named
Plaintiffs have alleged a sufficiently concrete and personal
injury in fact.  See Steel Co., 523 U.S. at 105 (assuming injury
in fact and deciding the question of standing on redressability).

[16]  By framing this injury as a continuing injury and not an
imminent future injury, Plaintiffs separate their claim from the
history of race discrimination class actions that have sought
successfully to enjoin future injury based on alleged race
discrimination.  See FED. R. CIV. P. 23(b)(2) advisory committee's
note (recognizing that Rule 23(b)(2) was intended to be used "in
the civil-rights field where a party is charged with
discriminating unlawfully against a class").

In addition, the named Plaintiffs also seek an injunction prohibiting the City and HUD from using overt racial stereotypes in the classification of neighborhoods and thus presumably continuing a discriminatory policy and practice traceable to its neighborhood classifications.[17]  However, the named Plaintiffs do not demonstrate how prohibiting the use of certain racial classifications will remedy the alleged ongoing economic effects of past racial discrimination on their particular properties.  An alteration of the classification system may not have any impact on their property or their neighborhoods.  Plaintiffs can only speculate that if the alleged classifications are altered, this will affect future investment, and thereby, their properties or neighborhoods will be improved by the change.  Such speculation cannot support Article III standing.  See Lujan, 504 U.S. at 561.

In a similar manner, Plaintiffs' general request that an injunction be ordered to "eradicate the effects of HUD's

---

[17]  Plaintiffs do not claim that the racial classification, itself, provides standing for the requested injunctive relief, but seek to tie the racial discrimination to continued effects of the demolition on their properties.  We recognize, "[i]n general, the racial classification of the homeowners is an injury in and of itself."  See Walker v. City of Mesquite, Tex., 169 F.3d 973, 980 (5th Cir. 1999).  In Allen v. Wright, the Supreme Court recognized the potential "stigmatizing injury caused by racial discrimination" and stated, "[t]here can be no doubt that this sort of noneconomic injury is one of the most serious consequences of discriminatory government action and is sufficient in some circumstances to support standing." 468 U.S. 737, 755 (1984)(emphasis added).  Because Plaintiffs have not based their standing argument on this theory, we need not address whether the alleged racial classification, alone, is "sufficient" in this circumstance "to support standing."  Id.

24

discrimination" or to have the district court approve a plan to eliminate the effects of the City and HUD's discrimination is an inappropriate remedy.  Plaintiffs have requested that HUD be ordered to remedy "the loss of housing units caused by the HUD funded housing code enforcement and housing code enforcement related demolitions of repairable single family units as well as the resulting blight caused by the loss of housing and households from those areas."  This request reveals both the compensatory nature of the proposed prospective relief and the over-broad nature of the remedy.  As stated above, if read to require comparable housing, this request is better characterized as a prayer for damages.  Further, if read as a sweeping request to generally eradicate the effects of discrimination, the request is not sufficiently targeted to remedy the named Plaintiffs' personal injuries.  Cf. Warth v. Seldin, 422 U.S. 490, 499 (1975) (recognizing that "a generalized grievance shared in substantially equal measure by all or most citizens" cannot provide standing to request injunctive relief).  Again, the named Plaintiffs can only speculate that their properties would be improved by such sweeping relief.

Finally, one of the named Plaintiffs' injunctive requests will have no effect on the alleged injury to their neighborhoods or on the named Plaintiffs' properties.  The request for a permanent injunction for HUD to "monitor" the City to determine if it is discriminating on the basis of race will not remedy the

25

continued depreciation in property values in the named Plaintiffs' neighborhood.[18]  For the above-stated reasons, the named Plaintiffs have not demonstrated that their injuries likely will be redressed by this requested relief, and thus, they have failed to demonstrate Article III standing for the Race Discrimination Class.

### C. Summary of Standing

In summary, the two named Plaintiffs, James and Lary, have demonstrated Article III standing for seven[19] of the Process Class requests for injunctive relief.  However, because these two named Plaintiffs cannot demonstrate how the remaining five[20] injunctive requests will redress their alleged injuries, they cannot demonstrate Article III standing for these Process Class claims.  We remand with instructions to dismiss the Process Class claims for injunctive relief for which the named Plaintiffs do not have standing.

---

[18]  Again, while this form of relief might be appropriate to redress alleged future injury from racial discrimination, it does not redress these named Plaintiffs' particular continuing economic injury.

[19]  See supra note 10.

[20]  Specifically, we hold that these two named Plaintiffs do not have standing to seek injunctive relief on behalf of the Process Class requesting that the City: (1) cease demolitions of repairable structures that are owned by African Americans or are situated in African-American areas; (2) cease demolitions of repairable structures without adequate notice; (3) return money paid with interest for demolition; (4) set aside foreclosures based on demolition liens; and (5) grant the named Plaintiffs clear title to a comparable replacement home.

In addition, because none of the requested injunctive relief will redress the named Plaintiffs' Race Discrimination injury, we hold that these named Plaintiffs have failed to demonstrate Article III standing for the Race Discrimination Class. Because the named Plaintiffs have failed to demonstrate Article III standing to bring their Race Discrimination Class claims, we vacate that Class and remand with instructions to dismiss those claims. Further, because the only claims against HUD were based on the Race Discrimination Class, we remand with instructions to dismiss HUD from the lawsuit.

We next address the requirements of Rule 23(b)(2) with regard to the remaining Process Class claims.[21]

## V. RULE 23(b)(2)

At the outset, we note that the City's principal arguments in opposition to the proposed Process Class have been mooted by our standing discussion. However, as the City has challenged the Rule 23(b)(2) Process Class certified by the district court and as some claims remain to be asserted by that class, we have an obligation to ensure that the requirements of Rule 23 are met. See FED. R. CIV. P. 23(a) & (b)(2). We hold that the district

---

[21] Because we resolve the class certification issue based on the requirements of Article III standing, we do not address other statutory standing issues that arise in this suit. See Alexander v. Sandoval, -- U.S. --, 121 S. Ct. 1511 (2001).

27

court did not abuse its discretion in certifying the Process Class against the City; however, as discussed supra regarding standing, the named Plaintiffs have Article III standing to seek only seven of their requested injunctions[22] and, thus, can only represent a Rule 23(b)(2) class constrained by these jurisdictional requirements.  We now turn to analyze the requirements of Rule 23.

### A. Rule 23 Requirements

To certify a class with respect to a claim, the district court must find that the putative class meets the four requirements set out in Rule 23(a).  See FED. R. CIV. P. 23(a). Rule 23(a) requires that (1) the class be so numerous that joinder of all members is impracticable [numerosity], (2) there be questions of law or fact common to the class [commonality], (3) the claims or defenses of the representative parties be typical of the claims or defenses of the class [typicality], and (4) the representative parties fairly and adequately protect the interests of the class [adequacy].  See Washington v. CSC Credit Servs., Inc., 199 F.3d 263, 265 (5th Cir. 2000) (citing FED. R. CIV. P. 23(a)).

The court must also find that the class fits within one of the categories of Rule 23(b).[23]  See FED. R. CIV. P. 23(b).

_____

[22]  See supra note 10.

[23]  Rule 23(b) reads in relevant part:

28

Relevant to this appeal, a court may certify a class under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." <u>Bolin v. Sears, Roebuck & Co.</u>, 231 F.3d 970, 975 (5th Cir. 2000) (quoting FED. R. CIV. P. 23(b)(2)). As <u>Bolin</u> recognized, "[t]he Advisory Committee Notes and our cases make clear that injunctive or declaratory relief is not 'appropriate' when the 'final relief relates exclusively or predominantly to money damages.'" <u>Id.</u>

---

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
> > (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> > (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

FED. R. CIV. P. 23(b).

29

(quoting FED. R. CIV. P. 23(b)(2) advisory committee's note); see also Allison v. Citgo Petroleum Corp., 151 F.3d 402, 411 (5th Cir. 1998). Therefore, in bringing their class action under Federal Rule of Civil Procedure 23(b)(2), Plaintiffs must demonstrate that their class action suit seeks predominantly injunctive relief rather than monetary damages. See Washington, 199 F.3d at 269. We address each of the requirements of Rule 23 in turn.

### 1. Rule 23(a): Numerosity

"To satisfy the numerosity prong, 'a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members.'" Pederson, 213 F.3d at 868 (quoting Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1038 (5th Cir. 1981)). The district court found that Plaintiffs presented evidence showing that 580 repairable single-family homes were demolished without adequate notice. Plaintiffs allege that there exist over 100 class members,[24] relying on the estimate of 580 individuals who had their property demolished without adequate notice. We conclude that the district court did not abuse its discretion in finding that there exists a sufficient number of proposed Process Class members to meet this requirement.

### 2. Rule 23(a): Commonality

---

[24] This general figure is listed in Plaintiffs' Second Amended Complaint and Third Amended Complaint.

To demonstrate commonality, Plaintiffs must allege that there exist "questions of law or fact common to the class." Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 625 (5th Cir. 1999). "The test for commonality is not demanding." Id.; see also Forbush v. J.C. Penney Co., 994 F.2d 1101, 1106 (5th Cir. 1993) ("The threshold of 'commonality' is not high." (citations omitted)). All that is required for each class is that there is one common question of law or fact: "The interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'" Forbush, 994 F.2d at 1106 (quoting Stewart v. Winter, 669 F.2d 328, 335 (5th Cir. 1982)). Therefore, the fact that some of the Plaintiffs may have different claims, or claims that may require some individualized analysis, is not fatal to commonality.

In this case, the members of the Process Class share a common factual circumstance of having their repairable single-family homes demolished without adequate notice of the final demolition order from the City, and a common legal theory that this action by the City violates the Due Process Clause of the Fourteenth Amendment. The theory of liability under 42 U.S.C. § 1983 would be the same for all Plaintiffs. We conclude that the district court did not abuse its discretion in finding sufficient commonality in the Process Class.

31

## 3. Rule 23(a): Typicality

In order to meet the typicality requirement, "the claims or defenses of the parties [must be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3); see Mullen, 186 F.3d at 625. "Like commonality, the test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." Mullen, 186 F.3d at 625 (citations omitted); Forbush, 994 F.2d at 1106. "Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000).

In this case, the named Plaintiffs are African-American property owners who have had their repairable single-family homes demolished without adequate notice, allegedly in violation of due process. Within the Process Class, James apparently represents the class of individuals denied all notice of impending demolitions. Lary represents those who received actual notice of the hearing, but did not receive adequate notice of the final demolition order. Because we determine that the named Plaintiffs' allegations are typical of the class that the named

Plaintiffs represent, we hold that the district court did not abuse its discretion in determining the typicality element of the class certification.

### 4. Rule 23(a): Adequacy

The final requirement of Rule 23(a) is that the district court must find that the "representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests."  Mullen, 186 F.3d at 625-26.  The district court found that there was "no conflict of interest between plaintiffs and the proposed classes."  As the City does not contest this finding, we hold that the district court did not abuse its discretion in finding that the named Plaintiffs could adequately represent the members of the Process Class.


### B. Rule 23(b)(2): Predominance of Injunctive Relief

"[T]o maintain an action under Rule 23(b)(2), [injunctive] relief rather than monetary damages must be the 'predominant' form of relief the plaintiffs pursue."  Washington, 199 F.3d at 269.  We are guided in our "predominance" analysis by the careful discussion of Rule 23(b)(2) set forth in Allison v. Citgo Petroleum Corp.  See 151 F.3d at 412-15.  The Allison court

recognized that the different presumptions with respect to "class cohesiveness" and "homogeneity of interests" among the members of the Rule 23 (b)(1), (b)(2), and (b)(3) classes necessitate different procedural safeguards for each potential class. See id. at 412; see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 612-13 (1997).

In the Rule 23(b)(2) context, "because of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members." Allison, 151 F.3d at 413. The cohesiveness of the class breaks down, however, when the class seeks to recover relief based on individual injuries. See id. Further, "as claims for individually based money damages begin to predominate, the presumption of cohesiveness decreases while the need for enhanced procedural safeguards to protect the individual rights of class members increases." Id. The court reasoned:

> [Rule 23](b)(2)'s predomination requirement serves two basic purposes: first, it protects the legitimate interests of potential class members who might wish to pursue their monetary claims individually; and, second, it preserves the legal system's interest in judicial economy.

Id. at 415. Based on this reasoning, the court held that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." Id. The Allison court explained that "[b]y incidental, we mean damages that flow directly from liability to the class as a whole

34

on the claims forming the basis of the injunctive or declaratory relief."  Id.  ("[S]uch damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances.").

In evaluating the proposed relief sought by the named Plaintiffs for which they have Article III standing,[25] we conclude that none of the concerns articulated in Allison bars class certification for the Process Class.  As stated, Plaintiffs request the following seven injunctive remedies:  that the City (1) cancel the debt assessed for demolition costs and associated fees/interest and file notice in the public deed record that the debt was cancelled, (2) file a release of the lien in the public deed records, (3) ensure that title is clear on the property, (4) ensure that all City records concerning the property show the debt cancelled, (5) refrain from taking any steps to enforce the lien or collect the debt, (6) refrain from foreclosures based on demolition liens, and (7) refrain from retaliatory action such as

---

[25]  Because we have concluded that the named Plaintiffs do not have Article III standing to seek "clear title to a comparable replacement single family housing unit," this request does not defeat class certification under Rule 23(b)(2). However, we note that Plaintiffs' request for an injunction to order the City to provide substitute houses would be substantially equivalent to a judgment against the City for damages in the amount necessary to buy substitute houses.  Cf. Jaffee v. United States, 592 F.2d 712, 715 (3d Cir. 1979) ("A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money.").

refusing to issue building permits.  This requested relief is consistent with the group-oriented nature of the alleged injury and presents no conflict with the injunctive purposes of Rule 23(b)(2).  See Allison, 151 F.3d at 415; FED. R. CIV. P. 23(b)(2) advisory committee's note.

As is evident, much of the requested redress is pure injunctive relief, which does not implicate a concern about monetary damages.  Further, whatever monetary cost may run against the City is incidental to the requested injunctive relief of removing the liens and clearing title from the consequences of the allegedly constitutionally deficient no-notice demolitions.  These monies "flow directly from the liability to the class as a whole on the claims forming the basis of the injunctive relief," Bolin, 231 F.3d at 976, and are, thus, proper under Rule 23(b)(2) to remove the continuing adverse effects of liens and debts on Plaintiffs' property.  Finally, there is no concern that "the legitimate interests of potential class members who might wish to pursue their monetary [damages] claims individually" would be interfered with by this class certification.  See Allison, 151 F.3d at 415.

Because we determine that the injunctive relief for which the named Plaintiffs have standing predominates over monetary damages, we hold that the district court did not abuse its discretion in certifying the Process Class.  Accordingly, we affirm the class certification as modified in this opinion.

36

## VI. CONCLUSION

Because we determine that the named Plaintiffs do not have standing to seek the relief requested for the "Race Discrimination Class," we VACATE the district court's certification of that class and REMAND with instructions to dismiss all the Race Discrimination Class claims against the City and HUD and to dismiss HUD from the lawsuit. Because we determine that the named Plaintiffs do have standing to seek the relief requested for seven of their twelve Process Class claims against the City and we determine further that the district court did not abuse its discretion in certifying the "Process Class," we AFFIRM AS MODIFIED the district court's certification of that class. Finally, because we determine that the named Plaintiffs do not have standing to seek the relief requested for five of their Process Class claims, we REMAND with instructions to dismiss those claims. Costs shall be borne one-half by Plaintiffs and one-half by the City. All pending motions are DENIED.