United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 30, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-41464
SUMMARY CALENDAR

_____

FRED M. MOORE, on behalf of himself and all other persons
similarly situated; RONALD C. HEARN

Plaintiffs - Appellants

v.

RADIAN GROUP INC., a Delaware Corporation; RADIAN GUARANTY
INC., a Pennsylvania Corporation; NORWEST CORP.; NORWEST
FINANCIAL SERVICES, now known as Wells Fargo & Company; WFC
HOLDINGS CORP., a Delaware Corporation; JOHN DOE LENDERS
I-X; JOHN DOE PMI CARRIERS I-X; WELLS FARGO DEFENDANTS;
NORWEST MORTGAGE INC.; WELLS FARGO & COMPANY

Defendants - Appellees

_____

On Appeal from the United States District Court for the
Eastern District of Texas, Marshall Division
(2:01-CV-23)

_____

Before REYNALDO G. GARZA, HIGGINBOTHAM, and BENAVIDES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:[1]

In this appeal we review a district court's decision to dismiss putative class representatives

_____

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

-1-

Fred Moore and Ronald Hearn's action for damages and declaratory and injunctive relief against defendants Radian Group, Inc. and Radian Guaranty, Inc. ("Radian"), Norwest Corp. and Norwest Financial Services, Inc. ("Norwest"), Wells Fargo and Company and Wells Fargo Holdings Corporation ("Wells Fargo"), for alleged violations of the Real Estate Settlement Procedures Act ("RESPA"). For the following reasons, we affirm the district court's decision.

I.

FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs Fred Moore and Michael Hearn both purchased homes and obtained mortgages to do so through Wells Fargo in the late 1990s. Pursuant to their mortgage agreements, Moore and Hearn were both required to purchase primary mortgage insurance ("PMI"). Lenders typically require prospective borrowers who cannot pay at least 20% of the value of their new home as a down payment to procure PMI as a condition to obtaining the loan. PMI protects the lender from the potential risk of a borrower's default when the borrower owns less than 20% equity in his or her home.

PMI premiums are paid by the lender, but are reimbursed by the borrower as a condition of the mortgage loan. Government-sponsored enterprises ("GSEs") such as the Federal National Mortgage Association ("Fannie Mae") and the Federal National Home Loan Mortgage Association ("Freddie Mac") purchase home mortgages from lenders on the secondary market and require PMI coverage on mortgage loans exceeding 80% of the home's value as a condition for purchasing the mortgage.

Plaintiffs' Fourth Amended Complaint alleged that in connection with their home mortgages, Plaintiffs' lenders purchased "pool insurance" from Radian at allegedly low prices in

exchange for the lenders' referral of PMI business to Radian.

Pool insurance insures large groups or "pools" of mortgages against the risk of loss from defaulting borrowers with loans within the pool. According to plaintiffs, Wells Fargo used pool insurance policies it bought from Radian to obtain reductions in guaranty fees it paid to Fannie Mae and Freddie Mac, the GSEs to which it resells mortgage loans.

Mortgage lenders like Wells Fargo reduce their risk, and also reduce the guaranty fee, by purchasing a pool insurance policy under which a commercial insurer such as Radian will, for a fee, assume some of the GSEs' risk of owning the pool of loans.

Putative class representatives Moore and Hearn ("Plaintiffs") filed an action for damages and declaratory and injunctive relief against Radian, Norwest and Wells Fargo, alleging violations of the anti-kickback and untruthful settlement practice provisions of RESPA. After the district court dismissed the Plaintiffs' third complaint and provided the plaintiffs with instructions regarding how to amend in order to satisfy standing, a Fourth Amended Class Action Complaint was filed. On September 10, 2002, the district court dismissed plaintiffs' complaint without prejudice based on lack of standing under Article III of the United States Constitution. The order also denied plaintiffs any further right or leave to amend. The plaintiffs filed notice of their appeal.

II.

DISCUSSION

A. Jurisdiction and Standard of Review

We have jurisdiction to decide this appeal based on 28 U.S.C. § 1291 because the district court's dismissal order was final and thus appealable. The issue on appeal involves the plaintiffs' standing –or lack thereof– which is a jurisdictional question that "goes to the constitutional power

-3-

of a federal court to entertain an action." *James v. City of Dallas, Texas*, 254 F.3d 551, 562 (5th

Cir. 2001). This Court reviews jurisdictional questions *de novo*. *Id.* When considering the issue of

standing on a Rule 12(b) dismissal, we must accept the allegations in the pleadings as true.

*Cramer v. Skinner*, 931 F.2d 1020, 1025 (5th Cir. 1991).

B. Standing

Article III of the Constitution limits the judicial power of the United States to the

resolution of cases and controversies. *Valley Forge Christian College v. Americans United for*

*Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700

(1982). The Supreme Court has inferred from the case or controversy requirement that a litigant

must have "standing" to maintain an action in federal court. In order to establish standing, Article

III requires a litigant to show, at a minimum:

> (1) that he or she has personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . .
> (2) that the injury "fairly can be traced to the challenged action" and . . .
> (3) that the injury "is likely to be redressed by a favorable decision."

*Id.* at 472, 102 S.Ct. at 758 (internal citations omitted). If there is no actual or threatened injury,

there is no case or controversy sufficient to confer jurisdiction on the federal courts.

Congress may, however, create enforceable statutory rights, the invasion of which by a

defendant, by itself, creates standing to sue. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S.

363 (1982) (invasion of plaintiffs' congressionally-created right to truthful rental information was

sufficient to satisfy Article III standing requirement).

As the Supreme Court has noted:

> The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing . . . . Moreover, the source of

the plaintiff's claim to relief assumes critical importance with respect to the prudential rules of standing that, apart from Art. III's minimum requirements, serve to limit the role of the courts in resolving public disputes. Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.

*Warth v. Seldin*, 422 U.S. 490, 500 (1975) (internal quotations and citations omitted).

C. Review of Plaintiffs' Contentions

The plaintiffs contend:

[t]hat the mortgage insurers provide agency pool insurance at below-market rates to the mortgage lenders in exchange for the lenders' referral of their PMI business to the mortgage insurers. According to the Complaint, the lenders who sell loans on the secondary market . . . must pay a guaranty fee to the GSEs to mitigate the risk of a borrower's early default. The plaintiffs contend that as an alternative to paying the entire guaranty fee, the lenders may purchase pool insurance. The lender's purchase of pool insurance reduces the guaranty fee paid by the lender. Thus, the cheaper the pool insurance, the more profit is reaped by the lender in connection with its sale of the loans on the secondary market.
        Against this backdrop is the kickback theory of the plaintiffs' case. The plaintiffs allege that the "thing of value" given by the mortgage insurers is the difference between the agency pool insurance received by the lender and the fair market or reasonable value of the agency pool insurance sold by the mortgage insurer. The plaintiffs aver that, in exchange for this "thing of value," the lenders refer their PMI business to the mortgage insurer providing the below-market agency pool insurance.

The plaintiffs do not allege that the defendants charged inflated PMI rates –in fact, they explicitly state this is not the case.[2] They also do not contend that the PMI or any other settlement service they received was of inferior quality. In addition, they do not contend that any portion of their PMI payments were kicked back to the lenders or used to underwrite any of the insurers' below-market sales of pool insurance in exchange for the referral. Rather, they contend that they have

_____

[2] The plaintiffs presumably avoid such arguments because the defendants have alternatively asked for dismissal under the filed-rate doctrine, which defendants assert –and which other courts have concluded– would preclude the plaintiffs from challenging the PMI rates in this case, which are established by state agencies.

-5-

standing to sue under RESPA even if the referral arrangement does not increase the PMI component of their settlement costs or if none of the PMI settlement charges are kicked back to the lender.

The district court –pursuant to *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002)– asked that the plaintiffs make a showing of standing. The district court found the plaintiffs' standing allegations deficient and ordered the plaintiffs to replead to allege an actual or threatened injury. The court reasoned that the plaintiffs' allegations that the defendants had violated RESPA, standing alone, were insufficient to confer standing in absence of an allegation of injury. After allowing the plaintiffs multiple opportunities to amend their pleadings in order to allege an actual or threatened injury, the district court dismissed the plaintiffs' complaint.

On appeal we are asked to decide whether the RESPA provisions on which the plaintiffs' claims are based can be understood as granting persons in the plaintiffs' position a right to judicial relief. According to the plaintiffs, they have standing under Article III because they allege they have been the object of defendants' unlawful kickbacks, which plaintiffs contend are *per se* violations of RESPA; as a result, plaintiffs further aver that the defendants have been untruthful in their settlement services to plaintiffs, which plaintiffs contend is precisely the conduct RESPA is designed to protect against.

Our resolution of this appeal can be achieved by an examination of the statutory provisions at issue, the legislative history of such provisions, and the doctrinal authority –limited though it might be– pertinent to the issues presented.

D. RESPA

Congress enacted RESPA in order to ameliorate and bring about reforms in the real estate

settlement process. The stated goals of RESPA include "more effective advance disclosure to home buyers and sellers of settlement costs" and "the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C § 2601 (entitled "Congressional findings and purpose").[3]

According to 12 U.S.C § 2617, the Department of Housing and Urban Development ("HUD") is charged with overseeing the implementation of RESPA. 12 U.S.C § 2617.

The cornerstone of plaintiffs' case involves the contention that the defendants violated the RESPA provision prohibiting kickbacks. The provision reads as follows:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of the real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a).[4] Although § 2607 of RESPA prohibits certain arrangements, the statute does not prohibit payments for services actually performed or for goods actually furnished. *See* 12 U.S.C. § 2607(c).

Section 2607 also provides a remedial scheme, which provides, in pertinent part, as follows:

> (1) Any person or persons who violate the provisions of this section shall be fined not more than $10,000 or imprisoned for not more than one year, or both.
> (2) Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service

---

[3] RESPA defines "settlement services" as "any service provided in connection with a real estate settlement" and then proceeds to provide a non-exclusive list of examples of such services. 12 U.S.C. § 2602(3).

[4] Plaintiffs also point to a second provision of RESPA, which prohibits the splitting of settlement charges in connection with a federally related mortgage loan transaction other than for services actually rendered. 12 U.S.C. § 2607(b).

involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service. . . .

(4) The Secretary [of Housing and Urban Development], the Attorney General of any State, or the insurance commissioner of any State may bring an action to enjoin violations of this section.

(5) In any private action brought pursuant to this subsection, the court may award to the prevailing party the court costs of the action together with reasonable attorney fees. . . .

12 U.S.C. § 2607(d).

As the above references to Section 2607 demonstrates, Congress clearly intended the ability to enforce the provisions of that section be shared by both government officials and private parties. The exact dimensions of their respective remedial avenues are at issue in this appeal.

As noted, § 2607(d) details the various remedial measures available for violations of § 2607(a). The first such provision, § 2607(d)(1), imposes criminal penalties and is not relevant –except as it aids in clarifying the respective roles of government and private actors in enforcing this section.

The second category, § 2607(d)(2), refers to a private party's recourse, and thus is the most clearly applicable remedial measure in this case. Accordingly, the plaintiffs seek treble damages as described in this subsection. It is extremely significant that plaintiffs do not allege that the referral arrangement increased any of the settlement charges at issue or that any portion of the charge for the settlement service was actually involved in the kick-back violation. According to plaintiffs, the remedial provision is triggered simply because of the per se violation by the defendants of the statutory language of section 2607(a). The defendants contend, however, that standing under § 2607(a) is not presumed, and that an actual injury must be alleged.

Firstly, it is noted that the private party action described in 2607(a) was intended to extend to "injured parties." S. REP. NO. 866, 93rd Cong. 2d Sess. 1974, 1974 U.S.C.C.A.N. 6546, 6556

-8-

(May 22, 1974) (section-by-section analysis noting that "any person who violates the provisions of [2607] (a) is liable in a civil action for treble damages sustained by injured parties"). In addition, Congress noted that the purpose of § 2607(a) was to eliminate kickbacks and referral fees that tend "to increase the cost of settlement services without providing any benefits to home buyers." *Id.* at 6551. Plaintiffs ask this Court to find that they have standing to sue despite the fact that they have not been overcharged for their PMI.

Though the doctrine in this particular area is sparse, two cases reviewing the damages available to private plaintiffs in § 2607(a) resulted in decisions we believe to be consistent with the intent expressed by Congress and the remedial scheme as it appears in § 2607(d).  In *Durr v. Intercounty Title Company of Illinois*, 14 F.3d 1183 (7th Cir. 1994), the Seventh Circuit addressed a borrower's claim that he had been overcharged for the recording of instruments with the clerk's office. The plaintiff sought recovery of the total amount of the settlement charges he had incurred, not just the portion of the fee that had been excessive. The court concluded that RESPA's treble damages provision did not allow for recovery of all the settlement charges paid by a borrower, but rather permits only the recovery of three times the amount of any alleged overcharges kicked back to a third party. Without an allegation that certain portions of the charge were illegitimate, there was no basis for concluding that the defendant was liable for any amount greater than the alleged overcharge.

The court in *Morales v. Attorneys' Title Ins. Fund, Inc.*, 983 F.Supp 1418 (S.D. Fla. 1997), also reviewed the damages available to private parties under § 2607(a). In *Morales*, the court rejected the plaintiffs argument that they were entitled to recover the entire insurance and title evidence charges each one of them paid. According to the court, the statute allowed only the

recovery of three times the portion of the settlement charge that was "involved in the violation." *Id.* at 1427. Ultimately we need not decide, as the *Durr* and *Morales* courts did, which portions of the settlement charge are available for trebling under 2607(d)(2). For purposes of the case at hand, *Durr* and *Morales* are instructive because they implicitly require private plaintiffs to have suffered an injury as a prerequisite to pursuing a RESPA claim under § 2607(a). *See Durr*, 14 F.3d at 1188; *Morales*, 983 F.Supp. at 1427-29.

Plaintiffs also seek injunctive relief, presumably similar to that described in 12 U.S.C. § 2607(d)(4). However, the plain language of § 2607(d)(4) belies any argument that private parties may pursue injunctive relief for violations of § 2607(a). Section 2607(d)(4) clearly lists the government officials that "may bring an action to enjoin violations of [§ 2607]" and there is no indication that a private individual may seek an injunction.

Given the comprehensive nature of the remedial scheme enacted by Congress, it seems that if it had intended private parties to have the ability to seek injunctive relief, Congress would have expressly provided for such a remedy. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19-20 (1979) ("it is an elemental cannon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be wary of reading others into it"); *Mullinax v. Radian Guaranty Inc.*, 199 F.Supp.2d 311, 333-35 (M.D.N.C. 2002) ("the Court finds that an injunction is unavailable in RESPA private actions"); *see also Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 97 (1981) ("The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement . . . . The judiciary may not, in the face of such comprehensive legislative schemes,

fashion new remedies that might upset carefully considered legislative programs"); *In re Fredeman Lit.*, 843 F.2d 821, 828-30 (5th Cir. 1988) (finding that RICO, which has remedial provisions similar to those of RESPA, did not create a private cause of action for injunctive relief).

Plaintiffs alternatively contend that they can establish standing because there is an implied right of action under § 2607 when lenders engage in untruthful settlement practices. According to plaintiffs, RESPA creates a statutory right of action for borrowers when lenders and mortgage insurers have engaged in untruthful settlement practices because the anti-kickback provisions in § 2607 are designed to prevent such practices.

While one of the purposes driving the enactment of RESPA was to facilitate the timely disclosure of information to home buyers, Plaintiffs assertion that § 2607(a) implies a right to truthful settlement practices is unpersuasive. On its face, 2607(a) applies to referrals for kickbacks, and contains no reference to obligations relating to reporting or disclosure at closing.

As discussed above, the legislative history suggests that 2607(a) was enacted to prohibit referrals that tend to increase the cost of settlement services without providing any benefits to the home buyer. S. REP. NO. 866, 93rd Cong. 2d Sess. 1974, 1974 U.S.C.C.A.N. 6546, 6551 (May 22, 1974); *see also Pedraza v. United Guar. Corp.*, 114 F.Supp.2d 1347, 1357 (S.D.Ga. 2000) ("[§ 2607(a)] does not create any duty on the part of Defendant to disclose the existence of such a scheme to Plaintiff or other members of her class."); *Moll v. U.S. Life Title Ins. Co.*, 700 F.Supp. 1284, 1289 (S.D.N.Y. 1998) ("[§ 2607(a)] does not, however, create a duty to disclose such payments").

As the district court pointed out, other provisions of RESPA explicitly address disclosure

requirements. *See, e.g.,* 12 U.S.C. §§ 2603 (requiring lenders to disclose uniform settlement standards), 2604 (requiring lenders to provide information booklets), 2605 (duty to notify of change in loan servicer), 2609 (requiring notices regarding escrow accounts). Section 2607(a) involves no such disclosure requirement, and thus the district court properly rejected the plaintiffs' standing argument based on a right to truthful settlement practices via 2607(a).

E. Concluding Remarks Regarding Standing Under RESPA

The plaintiffs' position is that the standing requirements of Article III are satisfied because Congress created a legal right by enacting RESPA, and that injury was established by an invasion of that right. Plaintiffs analogize their position to that of the plaintiffs in *Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982) and to that of plaintiffs in other cases where Congress has sought to provide standing to enable citizens to remedy harms and promote the public welfare.

Plaintiffs, however, have not pointed to any authority to support their argument that RESPA should be interpreted in a manner similar to the Fair Housing Act, which was at issue in *Havens*. In *Havens*, the plaintiffs brought suit under a statute that expressly required the disclosure of truthful information concerning real estate. More specifically, the provision at issue made it unlawful to "represent to any persons because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." *See Havens*, 455 U.S. at 373; 42 U.S.C. § 3612(a).

The invasion of the statutory right in *Havens* –the right to truthful rental information– was determined to have created a distinct and palpable injury sufficient to confer Article III standing. As is clear from the statutory language, such a right was expressly created by Congress. In the

-12-

case at hand, however, plaintiffs have no such statutory language to hang their hat on.

The private right of action and the injunctive relief available under Section 2607 of RESPA are distinct parts of a comprehensive remedial scheme. The legislative history and statutory language discussed above lead to the conclusion that, in the case at hand, the plaintiffs cannot establish standing simply by alleging a violation of the language of § 2607(a). The plaintiffs' burden to prove an injury-in-fact meeting Article III standing requirements includes the burden to "plead an actual or threatened injury that is fairly traceable to the conduct complained of and likely to be redressed by the relief requested." *Trinity Industries, Inc. v. Martin*, 963 F.2d 795, 798 (5th Cir. 1992); *see also Lewis v. Knutson*, 699 F.2d 230, 236 (5th Cir. 1983) ("In no event, however, may Congress abrogate the Art. III minima: A plaintiff must have always suffered a distinct and palpable injury to himself")(internal quotations and citations omitted). In short, given the above discussion, we conclude –and it seems clear– that the provisions of RESPA on which plaintiffs' claims rest cannot be said to grant persons in the plaintiffs' position the right to judicial relief that they claim. *See Warth*, 422 U.S. at 500.

III.

CONCLUSION

Given the above examination of the legislative history, statutory language, and case law surrounding RESPA § 2607(a), we agree with the district court's determination that it lacked jurisdiction to decide the case at hand. We express no opinion regarding the merits of plaintiffs' claims regarding whether or not a violation of § 2607(a) actually occurred. The only issue we determine relates to the plaintiffs' lack of standing due to their failure to articulate or plead an actual injury in fact. As to that issue, we are convinced that the plaintiffs did not satisfy their

-13-

Article III burden to demonstrate standing. For the foregoing reasons, the district court's decision

dismissing the plaintiffs' case is AFFIRMED.