Leo Jay **MATTE**, Connie Matte, Jessie Reyes, Ramon Reyes, Carroll G. Miller, Jr., Crystal Miller, Nicole Smith, Jody Smith, Ida Trahan, Corlis Thibodeaux, Shirley Thibodeaux, Phyllis Venable, Joseph Champagne, Gwendolyn Champagne, Nicole Denais, Nicholas Denais

v.

**SUNSHINE MOBILE HOMES, INC.**
[and 266 Other Defendants]

No. CIV.A. 02–0380.

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

June 9, 2003.

J Clemille Simon, Barry L Domingue, Lafayette, for Leo Jay Matte, Connie Matte, Jessie Reyes, Ramon Reyes, Carroll G Miller, Jr, Crystal Miller, Nicole Smith, Jody Smith, IDA Trahan, Corlis Thibodeaux, Shirley Thibodeaux, Phyllis Venable, Joseph Champagne, Gwendolyn Champagne, Nicole Denais, Nicholas Denais, All Plaintiffs.

Walter K Jamison, III, Lafayette, LA, for American Homestar Corp, American Homestar of Burleson Inc, American Homestar/Oak Creek Homes, Brilliant/Silhouete # 3, Brilliant/Carriage Homes, Brilliant Homes # 1, Burlington Homes of maine, Cappaert Manufactured Housing Inc.

Richard D Chappuis, Jr, Lamont P Domingue, James P Doherty, III, Voorhies & Labbe, Lafayette, LA, for Astro Homes, Bellcrest Homes, Belmont Homes, Belmont Homes #4, Belmont Homes #3, Belmont Homes, Inc., Belmont Delta Homes, Belmont #1, Brigadier Homes of NC, Buccaneer Homes #3, Buccaneer Homes #2, Buccaneer Homes of Alabama, Cavalier Homes, Inc., Cavalier Town & Country #2, Cavalier Town & Country #1, Cavalier Town & Country #3, Chariot Eagle Inc., Delta Homes Inc. Louisiana, Homestead Homes Georgia, Liberty Homes Kansas, Liberty Homes Inc. #1 Oregon, Liberty Homes Inc. Pennsylvania, Liberty Homes Inc. Wisconsin, Liberty Homes Inc. Florida, Liberty/Badger Homes Wisconsin, Liberty Homes Inc. North Carolina, Mansion Homes Inc. North Carolina, Norris Inc. #2 Tennessee, Norris Inc. #1 Tennessee, Riverchase Homes (Cavalier) Alabama, Riverchase Homes Alabama, Spirit Homes/Central #4 Arkansas, Waverlee Homes Inc. Alabama, Southern Energy Homes Inc., Southern Energy Homes of North Carolina, Inc., Al/Tex Homes Inc., CMH Manufacturing Inc., HBOS Manufacturing LP.

Jerry L. Saporito, Edward T. Hayes, Saporito & Sledge, New orleans, LA, for Fleetwood Homes of Ariz, Fleetwood Homes of Tex. #12, Fleetwood Homes of North Carolina #56, Fleetwood Homes #27 Tenn., Fleetwood Homes of Cal. #08, Fleetwood Homes of N. Caro. #69, Fleetwood Homes of Fla. #79, Fleetwood Homes of Tex #86, Fleetwood Homes of Georgia #75, Fleetwood Homes of Cal., #17, Fleetwood Homes#46 N. Car., Fleetwood/Springhill #34 Georgia, Fleetwood Homes of Fla #70, Fleetwood/Westfield #07, Fleetwood Homes, of N. Car. #41, Fleetwood Homes of Tex. #66, Fleetwood Homes of Penn. #22, Fleetwood Homes of Tennesse #27, Fleetwood Valuhomes Georgia, Fleetwood Homes of Idaho #04-02, Fleetwood Homes of Tex. #84, Fleetwood Homes of Ga. #05, Fleetwood Homes of Ga. #35, Fleetwood Homes of Texas, Inc., Fleetwood Homes of Ga. #54, Fleetwood Enterprises Inc. Cal., Fleetwood Homes of Oregon #48, Fleetwood Homes of Virginia #19, Fleetwood Homes of Miss #25, Fleetwood Homes of Washington #31.

Patrick A. Juneau, Jr., Thomas R. Juneau, Jean-Louis Lemaoine, Juneau Firm, Lafayette, LA, for Chandeleur Homes Inc. Alabama, Homes of Legend, Inc., TCC Clairon Limited Partnership, Castle Hous-

ing of Pennsylvania Ltd., Cavco Industries LLC, Champion Home Builders Co., Crest Ridge Homes, Inc., Fleming County Industries, Inc., Grand Manor Inc., Great Texas Homes, Inc., Highland Manufacturing Co., LLC, Homette Corp., Moduline Industries, Inc., Nobility Homes, Inc., Palm Harbor Homes, Inc., Pine Grove manufactured Homes, Inc., Skyline Corp., Commodore Corp., Homark Co., Inc., Western Homes Corp., Redman Homes, Inc., Dutch Housing, Inc., Homes of Merit, Inc., New Era Building Systems, Inc., River Birch Homes, Inc., Skyline Homes, Inc., Hallmark-SW Corp., Valley Manufactured Housing Inc.

Robert L. Bussey, Alexandria, LA, for Horton Homes Georgia.

Timothy W. Basden, Breaud & Lemoine, Lafayette, LA, for Indies House Inc. Alabama.

Charles M. Kreamer, Allen & Gooch, Lfayette, LA, Mark S. Weiss, Weiss & Wilson, Woodbridge, VA, for Manufactured Housing Enterprises Ohio.

Richard Joseph Petre, Jr., Michael P. Maraist, Onebane Law Firm, Lafayette, LA, for Medallion Manufactured Homes, Corp.

Lamont P. Domingue, Voorhies & Labbe, Lafayette, LA, David M. Loper. Brandy Murphy Lee, Campbell Waller & Loper, Birmingham, AL, for Franklin Homes Inc. Alabama.

Dennis John Hauge, Prairieville, LA, Daniel J. McCarthy, Mellon & McCarthy, Troy, MI, for Friendship Homes of Minnesota.

Katherine M. Loos, Briney & Foret, Lafayette, LA, James R. Jarrow, Mary Gayle Chappuis O'Connell, Baker Sterchi, Kansas City, MO, for Fuqua Homes Inc. Oregon Fuqua Homes Inc. Missouri.

Walter K Jamison, III, Lafayette, LA, Marjorie B. Breaux, Lafayette, LA, for

General Manufactured Housing Inc. Georgia.

Walter K Jamison, III, Lafayette, LA, Marjorie B. Breaux, Lafayette, LA, Ronald B. Lee, Elizabeth N. Davis, Aaron E. McQueen, Roetzel & Andress, Akron, OH, for Pioneer Housing System Inc. Georgia.

Gerald C. Delaunay, Perrin Landry, Lafayette, LA, Eric J. Nystrom Lindquist & Vennum, Minneapolis, MN, for Wick Building Systems Inc. Wisconsin, Wick Building systems/Marsh Field Wisconsin.

Mark C. Dodart, Nora Bolling Bilbro, Phelps Dunbar, New Orleans, LA, for Elliott Manufacturing Homes, Inc.

### Judgment

MELANCON, District Judge.

For the reasons contained in the Report and Recommendation and the Minute Entry of the Magistrate Judge previously filed herein, and after an independent review of the entire record, including the objections filed by plaintiffs [Rec. Doc. 193], having received no further objections after plaintiffs' June 26, 2003 letter to the Clerk of this Court requesting an extension to July 3, 2003 to further respond to the Magistrate Judge's Minute Entry [Rec. Doc. 194], and concurring with the Magistrate Judge's findings under applicable law,

IT IS ORDERED, that this is DISMISSED WITHOUT PREJUDICE in its entirety as against all defendants, with the exception of Oakwood Homes Corporation, for plaintiff's lack of standing to bring the asserted claims.

### *REPORT AND RECOMMENDATION*

Methvin, United States Magistrate Judge.

Before the court are sixteen motions to dismiss filed on behalf of 124 of the 282

named defendants in this products liability action.[1] The motions are filed pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(2) and 12(b)(6). Plaintiffs oppose the motions.[2]

For the following reasons, the undersigned concludes that plaintiffs lack constitutional standing and this court lacks subject matter jurisdiction to adjudicate the instant claims. Accordingly, it is recommended that the motions to dismiss be granted and that this suit be dismissed as to all defendants.

## I. Background

Plaintiffs filed the instant Petition for Class Certification and for Damages on January 29, 2002, in the 27th Judicial District Court for the Parish of St. Landry.[3] Plaintiffs are sixteen Louisiana residents who seek to represent all persons in the nation who have been damaged by the "mobile home industry." To the best of plaintiffs' knowledge, the 282 defendants comprise all of the corporations in the nation currently manufacturing mobile homes for residential or business use.[4]

Plaintiffs allege that all of the manufactured homes sold by defendants are "inherently defective" due to defective design and construction. The homes allegedly have insufficient vapor barriers and ventilation systems which cause an accumulation of moisture, resulting in rapid deterioration and production of mold spores and other allergens which endanger the health of owners and occupants. Plaintiffs also contend that defendants' manufactured homes are constructed with substandard building materials.

The complaint alleges the following causes of action: 1) negligence; 2) defective design and manufacture; 3) failure to warn; 4) fraud; 5) promissory fraud; 6) breach of implied warranties; 7) redhibition under the Louisiana Civil Code; 8) product liability under the Louisiana Products Liability Act; 9) violation of the Magnuson Moss Consumer Protection Warranty Act; 10) violation of the Unfair Trade Practices Act; 11) violation of the Consumer Protection Laws of Louisiana; 12) negligent infliction of emotional distress; and 13) intentional infliction of emotional distress.[5]

On February 28, 2002, a group of defendants removed the suit to this court on grounds of diversity jurisdiction, federal question jurisdiction, and bankruptcy jurisdiction.[6] The subject motions to dismiss were filed between March and November, 2002.

## II. Issues Presented

The motions before the court raise three key issues: 1) whether plaintiffs have

---

1. Seventeen separate motions were filed, but the motion to dismiss filed by Homebuilders Northwest, Inc. (Rec.Doc. 36) is moot, as this defendant was dismissed on plaintiffs' joint motion. (See Rec. Docs. 52, 160). The motions to dismiss are catalogued in the Appendix. Although the remaining movers represent 124 of the named defendants, they actually comprise only 50 parties due to misidentification and duplication of defendants named in the complaint.

2. Rec. Docs. 75, 85, 171, 189.

3. Petition for Class Certification and for Damages, Rec. Doc. 1.

4. See p. 17, Rec. Doc. 168 (currently under seal), "Plaintiff's Court–Ordered Submission of Pre–Suit Investigation Regarding Jurisdiction," (brief accompanying exhibits).

5. Complaint, Rec. Doc. 1, Paragraphs 19–50, pp. 21–27.

6. Rec. Doc. 32. On August 9, 2002, the court dismissed some defendants on joint motions. See Rec. Docs. 159, 160, 161, 162. Among the defendants dismissed were Kit Manufacturing, Inc. and Homebuilders NW, Inc., who had also filed Rule 12(b) motions; therefore, these defendants' Rule 12(b) motions are no longer pending.

standing to bring this class action suit; 2) whether plaintiffs have stated a claim upon which relief can be granted; and 3) whether the court has personal jurisdiction over certain of the defendants.

## III. Law and Analysis

 At the outset, it should be noted that several movers challenge both plaintiffs' standing as well as the court's personal jurisdiction over them. It is proper, although not required, for the court to address subject matter jurisdiction first—here implicated by the standing issue. *Ruhrgas AG v. Marathon Oil,* 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).[7] Where the court must address multiple grounds for dismissal, the court should consider "judicial economy and restraint in determining whether to dismiss claims due to a lack of personal jurisdiction before considering challenges to its subject-matter jurisdiction." *Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208 (5th Cir.2000), *relying on Ruhrgas, supra.*

In the instant case, considerations of judicial economy and restraint dictate that the court resolve the issue of subject matter jurisdiction first, and then, only if necessary, turn to the multiple and factually distinctive issues of personal jurisdiction. Accordingly, the issue of standing will be addressed first.

7. *Ruhrgas* held:
 [W]e recognize that in most instances subject-matter jurisdiction will involve no arduous inquiry. See 145 F.3d, at 229 ("engag[ing]" subject-matter jurisdiction "at the outset of a case ... [is] often ... the most efficient way of going"). In such cases, both expedition and sensitivity to state courts' coequal stature should *588 impel the federal court to dispose of that issue first. *See Cantor Fitzgerald, L.P. v. Peaslee,* 88 F.3d 152, 155 (C.A.2 1996) (a court disposing of a case on personal jurisdiction

### A. Rule 12(b)(1) Standard

 Rule 12(b)(1) Fed.R.Civ.P. governs challenges to a court's subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998) (*quoting Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996)). "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County,* 798 F.2d 736, 741 (5th Cir.1986) (*citing Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981)). The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir.1981).

 In ruling on a motion to dismiss for lack of standing, the court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). The court may allow plaintiffs to amend or provide affidavits in order to further particularize the allegations of fact deemed supportive

grounds "should be convinced that the challenge to the court's subject-matter jurisdiction is not easily resolved"). Where, as here, however, a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction.
 *Ruhrgas AG v. Marathon Oil Co., supra,* 526 U.S. at 587–588, 119 S.Ct. 1563.

of plaintiff's standing. If, after this opportunity, plaintiffs' standing "does not adequately appear from all materials of record, the complaint must be dismissed." *Id.*, 422 U.S. at 501–502, 95 S.Ct. 2197.

In this case, the issue of standing may be made on the basis of the complaint alone. However, because plaintiffs have sought to amend their complaint, and have filed into the record other submissions, some under seal, these matters are properly considered as well. All matters alleged by plaintiffs are construed in their favor, as required by *Warth v. Seldin.*

## B. Standing

■■■ It is well settled that unless a plaintiff has standing, a federal district court lacks subject matter jurisdiction to address the merits of the case. In the absence of standing, there is no "case or controversy" between the plaintiff and defendant which serves as the basis for the exercise of judicial power under Article III of the constitution. *Warth v. Seldin,* 422 U.S. 490, 498–499, 95 S.Ct. 2197, 45 L.Ed.2d 343. The key question is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant federal court jurisdiction. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

■■■ Standing is composed of three elements: (1) the plaintiff must have suffered an "actual or imminent" injury which is "concrete and particularized," and may not be "conjectural or hypothetical;" (2) there must be a causal connection between the injury and the conduct complained of; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *United States v. Hays,* 515 U.S. 737, 742–743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995); *quoting Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

■■■ In addition to the constitutional requirements, a plaintiff must also satisfy three prudential standing requirements. "Prudential principles are judicial rules of self-restraint, founded upon the recognition that the political branches of government are generally better suited to resolving disputes involving matters of broad public significance." *Apache Bend Apartments, Ltd. v. U.S. Through I.R.S.,* 987 F.2d 1174, 1176–1177 (5th Cir.1993) *citing Warth v. Seldin,* 422 U.S. 490, 499–500, 95 S.Ct. 2197, 2205–06, 45 L.Ed.2d 343 (1975); and *Defenders of Wildlife, supra,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351.

The first prudential restriction is that a plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth,* 422 U.S. at 499, 95 S.Ct. 2197. Second, a plaintiff's claim must present more than " 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 474–475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982) (*quoting Warth v. Seldin,* 422 U.S. at 499–500, 95 S.Ct. at 2205–06). This principle is closely related to the constitutional requirement of personal "injury in fact." *Id.,* 454 U.S. at 475, 102 S.Ct. at 760. "In both dimensions it is founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin,* 422 U.S. at 498, 95 S.Ct. at 2205. Third, in statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question. *Id.* These additional restrictions enforce the principle that, "as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Pestrak v.*

*Ohio Elections Comm'n,* 926 F.2d 573, 576 (6th Cir.1991).

Movers allege that plaintiffs have utterly failed to establish standing. A typical argument is advanced by the Fleetwood defendants: [8]

> None of the named plaintiffs in this case allege any specific injury resulting from a Fleetwood home. Moreover, none of the named plaintiffs allege that they purchased a Fleetwood home or that they owned, rented, occupied, or resided in a Fleetwood home. Fleetwood's records show that none of the named plaintiffs own a home manufactured by Fleetwood. Accordingly, the named plaintiffs do not have standing to assert any claim, either individual or representative, against Fleetwood.[9]

A reading of the complaint shows that the shortcomings described by the Fleetwood defendants apply to all other defendants as well, movers and non-movers alike. The complaint is devoid of allegations that any named plaintiff ever owned, rented, occupied, resided in, or otherwise had any contact with *any* mobile home—whether manufactured by one of the 282 defendants or another entity.

 To be sure, there is evidence elsewhere in the record suggesting that at least some of the plaintiffs live in mobile homes. Several applications to proceed *in forma pauperis,* filed in the original state court proceeding, contain information which indicates that the applicant-plaintiffs live in mobile homes. In a some cases, the manufacturer of the home is identified. For instance, plaintiffs Connie and Jay Matte state the value of their home as "unknown" and add that they live in a "1999 Sunshine Mobil (sic) Home." [10] This buried reference, however, falls far short of an affirmative allegation in the complaint that plaintiffs reside in a mobile home manufactured by Sunshine Mobile Homes, Inc. Moreover, the complaint is utterly devoid of any allegation that the Mattes—or any other plaintiff—have suffered any damage, harm, or injury as a result of contact with their own or any other mobile home. The complaint is devoid of any allegation of physical injury, property damage, or other loss as a result of the alleged defects.

Plaintiffs have been placed on notice of the deficiencies in the complaint by virtue of the subject motions to dismiss. Nonetheless, plaintiffs have made no effort to correct the deficiencies. Plaintiffs did seek leave to file a supplemental and amending complaint on April 1, 2002. However, the sole purpose was "to add additional plaintiffs and to correct a misnomer regarding the proper name of one of the defendants." [11] The motion to amend was denied on grounds that the proposed amendment would destroy removal jurisdiction, and after application of the factors in *Hensgens v. Deere & Co.,* 833 F.2d 1179, 1182 (5th Cir.1987).[12]

---

8. The complaint names 38 purported Fleetwood entities as defendants, although many of them are not independent legal entities. A single motion to dismiss was filed on behalf of the entire group. The motion clarifies their correct identities. See Vol. 4, Rec. Doc. 71, p. 2, fn. 1.

9. "Memorandum in Support of Rule 12(b)(6) Motion to Dismiss," Vol. 4, Rec. Doc. 71, pp. 4–5.

10. Attachment to complaint, Vol. 1, Rec. Doc. 1, "Facts Concerning Pauper" form completed by Connie Matte & Jay Matte.

11. "Motion for Leave to File Supplemental and Amending Complaint," Vol. 3, Rec. Doc. 60, p. 1.

12. The amended complaint sought to substitute Pioneer Housing Systems of Louisiana, Inc. for the defendant identified as "Pioneer Homes" in the original complaint. The court

Even if the motion to amend had been granted, it would not have corrected the problem of standing. The amended complaint added nothing to the allegations contained in the original complaint. One slight improvement was that the names of the proposed additional plaintiffs were followed by parenthetical references to a specific mobile home manufacturer, suggesting some connection between that plaintiff and a specific defendant. For instance, the first new plaintiff is listed as "Derick Robin (Bellcrest)." [13] Apparently, this formulation is meant to indicate that Derick Robin lives in a mobile home manufactured by defendant Bellcrest Homes. Even if the court were to accept this insinuation as an affirmative allegation, the proposed complaint, like the original complaint, contains no allegation of injury or damage suffered by any plaintiff. The amended complaint simply states that "plaintiffs adopt and plead all allegations of fact and law in their original Petition for Class Certification and for Damages as though fully set forth herein in extenso, to the extent not inconsistent with those pled herein." [14]

Responding to the argument that they failed to allege any contact with specific mobile homes, plaintiffs make the astonishing statement that *"[i]t is possible, if not probable*, that some or all of the named plaintiffs have either lived in, occupied or even purchased at some time or another a mobile home manufactured by some or all of the defendants." [15] As a complete ad-mission of no standing, this statement would be hard to improve upon.

As noted above, federal courts are authorized to hear only "cases and controversies" which fall within the limited judicial power of the United States as defined in the Constitution and federal statutory law. CONST. ART. III, § 2 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority"). *See Raines v. Byrd,* 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). The key element of the "case or controversy" requirement is that a plaintiff must have standing to sue. *Raines,* 521 U.S. at 818, 117 S.Ct. 2312 (1997). The Supreme Court instructs that "all of the doctrines that cluster about Article III—not only standing but mootness, ripeness, political question, and the like—relate in part, and in different though overlapping ways, to an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government." *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), *citing Vander Jagt v. O'Neill,* 699 F.2d 1166, 1178–1179 (D.C.Cir. § 1983) (Bork, J., concurring).

Standing is a core Article III doctrine:

The Art. III doctrine that requires a litigant to have "standing" to invoke the

---

determined that the two entities were not the same, that the "substitution" was in fact an effort to destroy diversity jurisdiction, and that the fact that a Louisiana corporation named Pioneer Housing Systems filed a motion to dismiss did not make it a party to the suit. *See* two rulings of the court addressing the denial of the motion to amend at Rec. Docs. 174 and 177.

**13.** "Supplemental and Amending Complaint," p. 1, attachment to Motion for Leave to File Supplemental and Amending Complaint, Vol. 3, Rec. Doc. 60.

**14.** "Supplemental and Amending Complaint," Vol. 3, Rec. Doc. 60, p. 2, ¶ III (emphasis supplied).

**15.** Plaintiffs filed four in globo briefs in opposition to the motions to dismiss. Each brief contains this same language. *See* Rec. Doc. 75, p. 2; Rec. Doc. 85, p. 2; Rec. Doc. 103, pp. 4–5, Rec. Doc. 189, p. 7.

power of a federal court is perhaps the most important of these doctrines. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin, supra,* 422 U.S., at 498, 95 S.Ct., at 2205. Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked. *See Valley Forge, supra,* 454 U.S., at 474–475, 102 S.Ct., at 759–760. The requirement of standing, however, has a core component derived directly from the Constitution. A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. 454 U.S., at 472, 102 S.Ct., at 758.

*Allen v. Wright,* 468 U.S. 737, 750–751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

Considering the legal principles, it is appropriate to examine plaintiffs' complaint carefully, first considering whether plaintiffs satisfy the constitutional requirements of standing, and then, if necessary, to consider the prudential requirements.

### C. The Complaint

■■■■ At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, assuming they meet the minimum requirements. *Public Citizen, Inc. v. Bomer,* 274 F.3d 212 (5th Cir.2001), *citing Defenders of Wildlife,* 504 U.S. at 561, 112 S.Ct. 2130.

In the instant complaint, plaintiffs do not allege *any* injury—general or specific. In fact, so bare is the complaint that it leaves one wondering if any plaintiff has so much as walked past a mobile home, much less been injured by one. As noted, plaintiffs admit only to a "possibility" that some of them have either lived in, occupied or purchased "at some time or another" a mobile home manufactured by defendants. A methodical search through the allegations of the complaint reveals no justiciable controversy.

The introduction to the Petition for Class Certification and Damages identifies the sixteen individual plaintiffs as Louisiana residents, and defines the two classes they seek to represent as follows:

A. All citizens, residents and domiciliaries of the United States who have purchased mobile homes from the named defendants and who have been damaged and continue to suffer damages as a result of the acts alleged herein, sometimes, referred to as "property damage plaintiffs";

B. All citizens, residents and domiciliaries of the United States who have been injured and who will continue to suffer injuries as a result of the acts alleged herein by the named defendants, hereinafter sometimes referred to as "personal injury plaintiffs." [16]

Paragraph 2 identifies the 282 corporate defendants which are in the business of manufacturing and selling mobile homes to United States citizens for use as homes and businesses.[17]

Paragraphs 3 through 13 fall under the subheading "Class Action Allegations." In this section of the complaint, plaintiffs seek to support their request for class action certification by alleging, e.g., that

**16.** Rec. Doc. 1.

**17.** Rec. Doc. 1.

there are common questions of law and fact at issue, that plaintiffs' claims are typical of the claims of other class members, and that the common questions of law and fact predominate over questions affecting only individual members. Although there are many references to "damages" suffered by the plaintiff class, there is no allegation that a specific plaintiff suffered any specific injury as a result of the alleged design defects. For instance, Paragraph 8 lists thirty questions of law and fact allegedly shared by the class. Number 21 on the list (page 17 of the complaint) implies that mold spores in defendants' mobile homes endangered the health of "owners and occupants." However, no plaintiff is identified as such an owner or occupant, and there is no allegation of any specific injury resulting from exposure to mold spores.[18]

Paragraphs 14 through 18 of the Complaint comprise a section entitled "Nature of the Action," which contains specific allegations regarding the alleged design defects in defendants' mobile homes, including:

1. "insufficient vapor barriers in the exterior walls;" (Par. 15 Subparagraph 1, pp. 19–20);

2. "insufficient attic and other ventilation systems;" (Par. 15 Subparagraph 2, p. 20);

3. construction with "substandard building materials, components and workmanship;" (Par. 15 Subparagraph 3, p. 20);

4. construction with "inadequate and/or insufficient metal chassis which bend and otherwise fail during transporta-

tion…;" (Par. 15 Subparagraph 4, p. 20);

5. failure to comply with "applicable building requirements and established construction standards and principles." (Par. 15 Subparagraph 5, p. 20);

Again, this section contains no allegation that any named plaintiff suffered an injury or other harm as a result of the alleged defects. While Paragraph 16 does set out a list of "various health problems" caused by the alleged defects, they are general in nature: no specific plaintiff alleges that he or she has suffered such an injury. Paragraph 16 reads as follows:

16.

Also as a result of the above-described defective design, construction and composition of said mobile homes, *the infiltration of moisture and other elements provides an environment conducive to the formation and growth of toxic mold spores which infiltrate the indoor environment of said mobile homes, producing various health problems,* including, but not limited to chronic sinus infections, nose bleeds, headaches, cognitive problems and other serious and life threatening ailments, rendering said mobile homes unreasonably dangerous and unfit for their intended purpose.

Notable in its absence is any allegation that a named plaintiff has suffered chronic sinus infections, nosebleeds or any other problem listed in this paragraph. Clearly, the allegations in this paragraph fall far short of the constitutional requirement that plaintiffs establish an "injury in fact" which is *"concrete and particularized,"* as

---

**18.** Subparagraph 21 alleges that one of the common issues presented is:

Whether the defendant manufacturers earned substantial profits by continuing to market mobile homes with knowledge of the fact that these mobile homes contained

inherent design and construction defects which cause the mobile homes to rapidly rot and deteriorate and produce mold spores and other allergens *endangering the health of owners and occupants of said mobile homes.*

well as *"actual or imminent, not conjectural or hypothetical." Hays, supra,* 515 U.S. at 742–743, 115 S.Ct. 2431 (1995), *quoting Defenders of Wildlife,* 504 U.S. at 560–561, 112 S.Ct. 2130 (1992).

Paragraphs 19 through 50 of the complaint assert various causes of action, including: 1) negligence; 2) defective design and manufacture; 3) failure to warn; 4) fraud; 5) promissory fraud; 6) breach of implied warranties; 7) redhibition under the Louisiana Civil Code; 8) product liability under the Louisiana Products Liability Act; 9) violation of the Magnuson Moss Consumer Protection Warranty Act; 10) violation of the Unfair Trade Practices Act; 11) violation of the Consumer Protection Laws of Louisiana; 12) negligent infliction of emotional distress; and 13) intentional infliction of emotional distress.[19] Like the others, this section contains no specific allegation of injury as to any plaintiff.

Nowhere in the complaint does any individual named plaintiff allege that he or she suffers from any health problem or has suffered any damage *for any reason.* The complaint does not contain a single allegation of illness, injury, property loss or other harm that is specific to any plaintiff. This is not a case where the allegations of injury are too abstract or speculative to meet the constitutional requirement for standing—in this case, the allegations of injury simply do not exist.[20]

Additionally, plaintiffs have not met the other two requirements of standing: a causal connection and redressability. In fact, plaintiffs have created an insurmountable obstacle to satisfying either of these elements. Unless a party alleges a concrete, particularized injury, there is no logical starting place for establishing a causal connection: the link which is supposed to proceed from the injury to the defendants starts in thin air. Furthermore, as defendants correctly note, "even plaintiffs with injuries do not have standing to bring claims against a defendant who did not cause those injuries." [21]

Neither can plaintiffs establish the likelihood that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Without any injury, there is nothing to be redressed.

In *Warth v. Seldin, supra,* the Supreme Court denied standing to plaintiffs who brought suit against the town of Penfield, New York, and against members of zoning, planning and town boards, claiming that town's zoning ordinance effectively excluded persons of low and moderate income from living in the town. The court accepted as true the following propositions:

- plaintiffs were minorities of low or moderate income;

- Penfield's zoning ordinance had the purpose and effect of excluding persons of low and moderate income, many of whom are members of racial or ethnic minority groups;

- If proved, the alleged intentional exclusionary practices would be adjudged

**19.** Complaint, Rec. Doc. 1, Paragraphs 19–50, pp. 21–27.

**20.** 2. For instance, the Supreme Court has observed, "[t]wice before have we addressed whether plaintiffs had standing to challenge the Government's tax treatment of a third party, and twice before have we held that *the speculative nature of a third party's response to changes in federal tax laws defeats standing."*

*Clinton v. City of New York,* 524 U.S. 417, 460, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998) (emphasis supplied).

**21.** Rec. Doc. 53, Several defendants have submitted affidavits that none of the named plaintiffs purchased a mobile from their company which were not considered by the undersigned in making this report and recommendation.

violative of the constitutional and statutory rights of the persons excluded;

• None of the plaintiffs had ever resided in Penfield;

• plaintiffs desired to live in Penfield;

• each plaintiff made some effort, at some time, to locate housing in Penfield that was at once within his means and adequate for his family's needs;

• all of plaintiffs' efforts to locate housing in Penfield were fruitless;

• respondents' actions have contributed, perhaps substantially, to the higher cost of housing in Penfield.

The court noted that "there remains the question whether petitioners' inability to locate suitable housing in Penfield reasonably can be said to have resulted, in any concretely demonstrable way, from respondents' alleged constitutional and statutory infractions." *Warth v. Seldin,* 422 U.S. 490, 504, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The court concluded that petitioners' inability to obtain housing in Penfield was more likely due to their respective financial situations, but that in any event, the facts alleged failed to support an "actionable causal relationship" between Penfield's zoning practices and petitioners' asserted injuries:

Petitioners must allege facts from which it reasonably could be inferred that, absent the respondents' restrictive zoning practices, there is a substantial probability that they would have been able to purchase or lease in Penfield and that, if the court affords the relief requested, the asserted inability of petitioners will be removed. We find the record devoid of the necessary allegations.

* * * As the Court of Appeals noted, none of these petitioners has a present interest in any Penfield property; none is himself subject to the ordinance's strictures; and none has even been denied a variance or permit by respondent officials. 495 F.2d, at 1191. Instead, petitioners claim that respondents' enforcement of the ordinance against third parties—developers, builders, and the like—has had the consequence of precluding the construction of housing suitable to their needs at prices they might be able to afford. The fact that the harm to petitioners may have resulted indirectly does not in itself preclude standing. * * * But it may make it substantially more difficult to meet the minimum requirement of Art. III: to establish that, in fact, the asserted injury was the consequence of the defendants' actions, or that prospective relief will remove the harm. Here, by their own admission, realization of petitioners' desire to live in Penfield always has depended on the efforts and willingness of third parties to build low- and moderate-cost housing. The record specifically refers to only two such efforts: that of Penfield Better Homes Corp., in late 1969, to obtain the rezoning of certain land in Penfield to allow the construction of subsidized cooperative townhouses that could be purchased by persons of moderate income; and a similar effort by O'Brien Homes, Inc., in late 1971. But the record is devoid of any indication that these projects, or other like projects, would have satisfied petitioners' needs at prices they could afford, or that, were the court to remove the obstructions attributable to respondents, such relief would benefit petitioners. Indeed, petitioners' descriptions of their individual financial situations and housing needs suggest precisely the contrary—that their inability to reside in Penfield is the consequence of the economics of the area housing market, rather than of respondents' assertedly illegal acts. In short, the facts alleged fail to support an actionable causal relationship

between Penfield's zoning practices and petitioners' asserted injury. *Id.* at 504–507, 95 S.Ct. 2197.

It goes almost without saying that the individual plaintiffs in *Warth* presented a far more compelling case for standing that the plaintiffs in the instant case. They at least made an attempt to assert a personal injury and to establish causation. Here, even if the court accepts as true all of the allegations in plaintiffs complaint, the only thing that would be established is that defective mobile homes are knowingly manufactured and sold by the defendants. Not one allegation in the complaint begins to address any of the three threshold requirements of standing: a concrete and particularized injury; a causal connection; or redressability.

The material factual allegations in the complaint can be summarized as follows:

- for years, the mobile home industry has knowingly manufactured mobile homes which are inherently defective in design, composition and construction, in a variety of ways;
- the defects in mobile homes result in an "environment conducive to the formation and growth of toxic mold spores;"
- the mold spores infiltrate the interior of the homes and cause various health problems;
- defendants failed to warn class members of the defects in their mobile homes;
- if class members had known of the defects, they would not have purchased their mobile homes.

Measured against the constitutional requirements of standing, plaintiffs' allegations are batting zero for three. The contentions in the complaint establish no actual, concrete injury, no causal connection, and no likelihood that the exercise of federal jurisdiction would redress anything. Furthermore, as the court in *Warth* noted, "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth,* 422 U.S. at 499, 95 S.Ct. 2197.

## D. Effect of Class Action on Standing

 Plaintiffs argue that in class actions, the court should not use an "overly rigid application of standing principles," citing *Akerman v. Oryx Communications, Inc.,* 609 F.Supp. 363, 375 (S.D.N.Y.1984). In fact, *Akerman* stands for the opposite principle—it reaffirmed that class actions do not alter the constitutional requirement of standing.

In *Akerman,* plaintiff investors had purchased stock which had declined in value, allegedly due to an inaccurate prospectus and registration materials. Plaintiffs sued not only the sellers of their shares, but also the underwriters responsible for the inaccurate filings. Plaintiffs sought to certify both a plaintiff class as well as a defendant class of underwriters, despite the fact that each plaintiff did not have a cause of action against each defendant. The court noted that certification of a defendant class would violate standing principles, since it would impose "joint liability against the group even though the plaintiff may have dealt primarily with a single member." The court observed that "a number of commentators have argued against an overly rigid application of standing principles." The court also noted that some courts have "shown a willingness to find that named plaintiffs have standing to sue a class encompassing some defendants against whom they individually might not have a cause of action on the ground that the plaintiff class as a whole has been victim of a unified governmental policy carried out by the individual defendants." *Id.,* 609 F.Supp. at 375. The court concluded, however, that the tradi-

tional principles of standing must be applied:

> These opinions do not, however, herald a new era in which "the class will be allowed to replace the individual as a relevant actor for article III purposes," DEVELOPMENTS [IN THE LAW—CLASS ACTIONS, 89 Harv.L.Rev. 1318 (1976)] at 1470, but rather they acknowledge that each member of the class is *in fact* injured by the concerted action of the defendants in enforcing a unified policy.

*Id.* at 375 (emphasis in original). Thus, *Akerman* reaffirmed the constitutional requirement of standing that each member of a plaintiff class allege an *injury in fact.* As discussed above, plaintiffs have completely failed to meet this threshold requirement of standing.

The Supreme Court has spoken clearly on this issue: "That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey,* 518 U.S. 343, 357, 116 S.Ct. 2174, 2183, 135 L.Ed.2d 606 (1996), *citing Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 40, n. 20, 96 S.Ct. 1917, 1925, n. 20, 48 L.Ed.2d 450 (1976), *(quoting Warth v. Seldin,* 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975)).

The Fifth Circuit recently addressed the issue of standing in the context of a class action suit in *James v. City of Dallas,* 254 F.3d 551, 563 (5th Cir.2001). The plaintiff class alleged, among other things, that the City of Dallas and HUD demolished houses in minority neighborhoods at a much higher rate that those in white neighborhoods, and that defendants' classification procedures resulted in ongoing economic injury for the plaintiff class as a result of property depreciation and by discouraging public and private investment.

The court required each named member of the plaintiff class to establish all three elements of standing under *United States v. Hays, supra,* 515 U.S. at 742–743, 115 S.Ct. 2431:(1) a concrete and particularized injury; (2) a causal connection between the injury and the conduct complained of; and (3) redressability. The court noted that "[i]f the litigant fails to establish standing, he or she may not seek relief on behalf of himself or herself or any other member of the class," *citing O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). *James,* 254 F.3d at 563.

After careful review, the Fifth Circuit determined that the named plaintiffs lacked standing to bring the race discrimination claim because they could not show that they owned any houses which would be demolished, and thus could not demonstrate the "likelihood of substantial and immediate irreparable injury." *Id.,* 254 F.3d 551, 566, *citing O'Shea,* 414 U.S. at 502, 94 S.Ct. 669. The court concluded that the plaintiff class was therefore unable to establish the third requirement of standing, that it is "likely, as opposed to merely speculative, that the injury will be redressed in a favorable decision:"

> We conclude that because the named Plaintiffs cannot demonstrate that any of their requested relief will redress the alleged injury, these named Plaintiffs do not have Article III standing for the Race Discrimination Class claims. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 105, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (finding that because none of the requested relief would remedy the alleged injury, plaintiffs did not have Article III standing); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.,* 528 U.S. 167,

185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (recognizing that "a plaintiff must demonstrate standing separately for each form of relief sought").

*James v. City of Dallas,* 254 F.3d at 566.

In the instant suit, the relief requested by plaintiffs is set forth in Paragraph 52 of the complaint, p. 27:

> Class plaintiffs further itemize their damages as follows: recission and/or reduction in the purchase price of the said mobile homes, return of the purchase price, with interest, reimbursement of expenses associated with the sale, reasonable expenses associated with the preservation of the mobile homes, depreciation, loss of value, loss of marketability, past and future physical pain and suffering and mental anguish loss of enjoyment of life, lost wages, loss of insurability, medical expenses, past and future permanent disability, attorney's fees, punitive damages, expert fees costs and all such damages and equitable relief as are reasonable in the premises.

Because the named plaintiffs in this suit have alleged no concrete injury as a result of the products or the alleged actions of the "mobile home industry", they cannot establish that the requested relief would provide a remedy. Like the plaintiffs in *James v. City of Dallas,* plaintiffs in the instant case cannot meet the redressability requirement of standing.

### E. Juridical Links Doctrine and Rule 23 Issues

Plaintiffs argue that the "juridical links doctrine" provides an exception to the general standing requirements.[22] The short answer to this argument is that the juridical links doctrine has no bearing on the issue of standing. Instead, it provides an exception to the Rule 23(a) requirement of "typicality" and/or "adequacy of representation" in class actions against multiple defendants.

Before delving further into the "juridical links" argument, however, it should be noted that while the issue of class certification is not before the court, it bears some discussion not only in connection with the latter argument, but also in the broader context of the overall merits of this action. In fact, the Supreme Court has held that where both standing and class certification issues are presented, the court should address the class certification issues first:

> While an Article III court ordinarily must be sure of its own jurisdiction before getting to the merits, *Steel Co. v. Citizens For a Better Environment,* 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210, a Rule 23 question should be treated first because class certification issues are "logically antecedent" to Article III concerns, *Amchem, supra,* at 612, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689, and pertain to statutory standing, which may properly be treated before Article III standing, *see Steel Co., supra,* at 92, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210.

*Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 816, 119 S.Ct. 2295, 2300, 144 L.Ed.2d 715 (1999), *citing Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689, (1997).

In this case, it is not necessary to address Rule 23 class certification before standing. The Fifth Circuit has limited the application of *Amchem* and *Ortiz* where, as here, the issue of standing would exist regardless of whether the suit were filed by plaintiffs jointly or as a class action. In *Rivera v. Wyeth–Ayerst Laboratories,* 283 F.3d 315, 318 (5th Cir.2002), the court held that "[s]tanding is an inherent prerequisite to the class certification inquiry," *citing Bertulli v. Indep. Ass'n of*

---

22. Plaintiff's Memorandum in Opposition to the Motion to Dismiss, Rec. Doc. 75, p. 8.

*Cont'l Pilots,* 242 F.3d 290, 294 (5th Cir. 2001). The court noted that the "first and fundamental question" is that of jurisdiction, and that *Amchem* and *Ortiz* require courts to address class certification before standing only in limited circumstances:

> Although there is a limited exception for suits in which the class certification issues are "logically antecedent to the existence of any Article III issues," *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 612, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *accord Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (citations omitted), this exception is not applicable here. In the instant case, in contrast to *Ortiz* and *Amchem,* the standing question would exist whether Rivera filed her claim alone or as part of a class; class certification did not create the jurisdictional issue. Nor are we precluded from addressing standing by the fact that the district court did not discuss it. "[B]ecause 'standing is a jurisdictional requirement, [it] may always be addressed for the first time on appeal.'"

*Public Citizen,* 274 F.3d at 217 (quoting *Sierra Club v. Cedar Point Oil Co.,* 73 F.3d 546, 555 n. 22 (5th Cir.1996)).

*Rivera,* 283 F.3d at 318, fn. 6.

While this report will not undertake a full analysis of the issues related to Rule 23 class certification, some aspects will be touched upon in addressing plaintiffs' "juridical links" argument.

### 1. Standards of Rule 23

■■■■ A district court has great discretion in determining whether to grant class certification under Rule 23. *See Mullen v. Treasure Chest Casino, L.L.C.,* 186 F.3d 620, 624 (5th Cir.1999). Certification is not warranted unless the court is satisfied, after "rigorous analysis," that all prerequisites have been met. *Castano v. American Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996) (*citing General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)). To be certified, the class must first satisfy four threshold requirements (shorthand terms are in parentheses):

| | |
|---|---|
| 1. *Numerosity:* | The class is so numerous that joinder of all members is impracticable; |
| 2. *Commonality:* | There are questions of law or fact common to the class; |
| 3. *Typicality:* | The claims or defenses of the representative parties are typical of the claims or defenses of the class; |
| 4. *Adequacy of Representation:* | The representative parties will fairly and adequately protect the interests of the class. |

■■■ In addition to satisfying the requirements of Rule 23(a), the party seeking class certification must show that the action falls within one of the categories listed in Rule 23(b). *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997).[23]

---

**23.** Rule 23(b) provides as follows:

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the

The "juridical links doctrine" was first articulated as dicta in the case of *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir.1973). Because *La Mar* addressed issues similar to those presented here, it bears some discussion.

In *La Mar*, the Ninth Circuit considered two different cases involving bilateral class actions—i.e. actions in which a plaintiff sought to represent a plaintiff class against a defendant class. As here, a key problem was that the plaintiff in each suit did not have a cause of action against each of the defendants.[24] After determining that its decision would be dictated by the requirements of Rule 23, the *La Mar* court examined the specific claims presented. In the first case, the plaintiff sued all pawn brokers licensed in the State of Oregon on behalf of all customers of such pawn brokers to recover either $100 or double the finance charges for alleged violations of the Truth–in–Lending Act. Plaintiff estimated that there were 33,000 such customers and that the recovery would be in the range of three million dollars. The plaintiff himself had done business with only one pawn broker. The district court found the class action proper as against all of the defendants, and held that plaintiff could represent class members who had borrowed from any pawn broker in the defendant class. The Ninth Circuit reversed and directed that plaintiff's action be dismissed as to all defendants except the one with whom he had personally dealt. Plaintiff was allowed to maintain a class action, but the plaintiff class was limited to those who had likewise dealt with the sole remaining defendant.

In the second suit, the plaintiff sought to represent all consumers of airline tickets who had been overcharged $10 in violation of FAA rules. Defendants were eight air carriers. Plaintiff estimated that the overcharges amounted to eighty million dollars in the preceding four years. The district court dismissed the complaint as to six of the air carriers on grounds that the plaintiff had no dealings with them. The Ninth Circuit affirmed the dismissal, holding as follows:

> The common issue of these cases is whether a plaintiff having a cause of

interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesir-

ability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

24. On the issue of standing, the court determined that it need not be addressed "because in our view, under a proper application of Rule 23 of the Federal Rules of Civil Procedure, the plaintiffs here are not entitled to bring a class action against defendants with whom they had no dealing." The court assumed for purposes of the appeal that plaintiffs had standing. It is important to note, however, that the court assumed the presence of standing only after finding that plaintiffs had suffered an actual injury "by the practices about which they complained." *La Mar*, 489 F.2d at 464. As previously discussed, plaintiffs in this case have not alleged any injury as a result of the alleged practices of defendants, and therefore standing cannot be assumed as in *La Mar*.

action against a single defendant can institute a class action against the single defendant and an unrelated group of defendants who have engaged in conduct closely similar to that of the single defendant on behalf of all those injured by all the defendants sought to be included in the defendant class. We hold that he cannot. Under proper circumstances, the plaintiff may represent all those suffering an injury similar to his own inflicted by the defendant responsible for the plaintiff's injury, but in our view he cannot represent those having causes of action against other defendants against whom the plaintiff has no cause of action and from whose hands he suffered no injury.

*La Mar, supra*, 489 F.2d at 462.

■ The *La Mar* court's analysis rested on the failure of the plaintiffs to satisfy the requirements of Rule 23(a). The court reasoned that a class representative who has no claim against an individual defendant lacks the requisite "typicality" and "adequacy of representation" to litigate a claim against that defendant on behalf of a plaintiff class.[25] The court held that, "In brief, typicality is lacking when the representative plaintiff's cause of action is against a defendant unrelated to the defendants against whom the cause of action of the members of the class lies." *Id.* at 465. The court also reasoned that:

> ... a plaintiff who has no cause of action against the defendant can not "fairly and adequately protect the interests" of those who do have such causes of action. This is true even though the plaintiff may have suffered an identical injury at the hands of a party other than the defendant and even though his attorney is excellent in every material respect.

*Id.*, 489 F.2d at 466. The court observed that the 1966 amendments to Rule 23 were not meant "to open the door to massive lawsuits covering entire industries." The court held:

> * * * [T]here is nothing in the Advisory Committee's Note that suggests that the amendments had as their purpose the authorization of massive class actions conducted by attorneys engaged by near-nominal plaintiffs. The tone of such Note is one of prudence and caution. Certain examples are set forth with the suggestion that they "may be" instances in which a class action is proper. Moreover, the Note requires that the court find that the class action is "superior" to possible alternative procedures.

*La Mar*, 489 F.2d at 466.

■ The instant action appears to be just such a suit described in *La Mar*: a massive lawsuit intended to cover the entire "mobile home industry." For the same reasons discussed in La Mar, plaintiffs fail to meet the requirements of typicality and adequacy of representation under Rule 23(a) because plaintiffs have not alleged any injury caused by even one of the 282 defendants sued, much less all of them. Even if the individual plaintiffs were to amend the complaint to assert that they purchased specific mobile homes from specific defendants, and that plaintiffs were each injured as a result of alleged defects, the plaintiffs still could not maintain a class action against all 282 mobile home defendants for the reasons discussed in *La Mar*: such plaintiffs cannot meet the Rule 23(a) requirements of "typicality" or "adequacy of representation" as to claims against defendants with whom they had no dealings. In fact, it is even doubtful that

**25.** Claims are considered typical under Rule 23 when "each class member's claims arises from the same course of events, and each class member makes similar legal arguments to prove defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997).

under the more permissive joinder provisions of Rule 20, plaintiffs could join in the same lawsuit individual mobile home manufacturers from whom they purchased defective homes—even if all problems of standing were overcome. See, e.g. *Turpeau v. Fidelity Financial Services, Inc.*, 936 F.Supp. 975, 978–79 (N.D.Ga.1996) aff'd, 112 F.3d 1173 (11th Cir.1997) (improper joinder under Rule 20(a) where plaintiffs filed a class action against various unrelated lenders and life insurance companies for alleged credit life insurance overcharges; even though plaintiffs complained of similar practices, the claims did not arise from the same transaction or series of transactions because "each credit transaction was made by different Plaintiffs with different Defendants." Id. at 978.)

 Plaintiffs argue that "even if this case is analyzed from a posture that assumes that none of the named plaintiffs have a direct cause of action, the representative plaintiffs have the requisite standing to represent the un-named members of the subject classes."[26] It is well-settled that Rule 23 cannot be interpreted in such a manner as to broaden the jurisdiction of federal courts. For example, if a plaintiff lacks standing to bring an action, he does not cure the defect by creating a Rule 23 class in the hopes that some members of the class will have standing to sue the defendant. Rule 82, F.R.Civ.P., provides: "These rules shall not be construed to extend or limit the jurisdiction of the United States district courts * * *." The requirement of standing is a limitation on the jurisdiction of the federal courts. *Flast v. Cohen*, 392 U.S. 83, 94–100, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Thus, a plaintiff who lacks standing to sue a defendant may not acquire such status through class representation. *Weiner v. Bank of King of Prussia*, 358 F.Supp. 684, 694 (E.D.Pa., 1973). "Standing is one of the keys necessary to open the door to the federal courthouse. Rule 23 merely provides a procedural doorstop which holds the door open for qualified class members, once it has been opened by the person or persons initially seeking entry." *Chevalier v. Baird Savings Ass'n*, 66 F.R.D. 105 (E.D.Pa.1975).

#### 2. The Juridical Links Doctrine

The *La Mar* court discussed the "juridical links doctrine" in the course of distinguishing several civil rights cases which had permitted multiple-defendant class actions where the named plaintiffs lacked a cause of action against each defendant.[27] The court held:

> Obviously this position does not embrace situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury. Nor is it intended to apply in instances in which all defendants are juridically related in a manner that suggests a

26. Rec. Doc. 75, 85, 103, 189.

27. *See Contract Buyers League v. F & F Inv.*, 300 F.Supp. 210, (N.D.Ill.1969), in which black home buyers in Chicago were allowed to sue multiple defendants who had allegedly engaged in a concerted pattern of discrimination, exacting higher installment prices from blacks than from white buyers. This case was distinguished on grounds that it involved "a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury." *La Mar*, 489 F.2d at 466. *See also Washington v. Lee*, 263 F.Supp. 327 (M.D.Ala.1966) in which black prisoners in Alabama were allowed to bring a class action against various Alabama state officials and jailers to challenge segregation policies at jails and detention facilities. The *La Mar* court distinguished this case on grounds that the defendants had a legal relationship: "all the defendants were officials of a single state and its subordinate units of government." *Id.*

single resolution of the dispute would be expeditious.

*La Mar*, 489 F.2d at 466. While *La Mar* was the first case to articulate the juridical links doctrine, and then only in dicta, the doctrine has developed over time.[28] The doctrine originally applied only to government defendants, but has been expanded to private actors connected by a common agreement or uniform practice.[29]

"A 'juridical relationship,' often also called a 'juridical link,' refers to some type of legal relationship which relates all defendants in a way that would make single resolution of a dispute preferable to a multiplicity of similar actions." *In re Itel Securities Litig.*, 89 F.R.D. 104, 121 (N.D.Cal.1981). *La Mar* only briefly discussed what types of relationships might qualify as "juridical links," and cited a few prior cases where a juridical link was present. Such cases generally involved class actions brought against state officials applying a common rule. Even though the plaintiff class representatives in those cases did not have a cause of action against each defendant, the court reasoned that a "common rule applied by instrumentalities of a single state" presents a juridical link sufficient for maintaining an action as a class action. *La Mar*, 489 F.2d at 470. *See also Akerman v. Oryx Communications, Inc.*, 609 F.Supp. 363, 376 (S.D.N.Y. 1984) (noting that juridical link exists where "plaintiff class as a whole has been victim of a unified governmental policy carried out by the individual defendants"), aff'd, 810 F.2d 336 (2nd Cir. 1987); *Marcera v. Chinlund*, 595 F.2d 1231 (2d Cir.1979) (county sheriffs named as a class of defendants implementing a statewide administrative practice of denying contact visitation rights to prison inmates), vacated on other grounds, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979); *Turpeau v. Fidelity Financial Services, Inc.*, 936 F.Supp. 975, 978–79 (N.D.Ga.1996) (no juridical link among defendant lenders and life insurance companies although each allegedly violated same state statute in same manner; defendants were not state officials charged with enforcing state statute or common rule or practice), aff'd, 112 F.3d 1173 (11th Cir. 1997).

*Leer v. Washington Education Association*, 172 F.R.D. 439, 447–448 (W.D.Wash. 1997)

In the instant case, plaintiffs do not allege that defendants engaged in a conspiracy or a concerted scheme to manufacture defective mobile homes, nor do defendants have a legal relationship "which relates all defendants in a way that would make a single resolution of a dispute preferable to a multiplicity of similar actions relationship." *In re Itel Securities Litig.*, 89 F.R.D. 104, 121 (N.D.Cal.1981). Plaintiffs argue, rather, that the juridical links doctrine should be applied because "all of the defendants are linked by the Manufactured Home Construction and Safety Standards Act ('The Act'), 42 U.S.C.A. § .5401, *et seq.*"[30] Plaintiffs contend:

The Act establishes a comprehensive system for attempting to *ensure* the safety and quality of mobile homes and give the secretary of Housing and Urban Development *strict* control over mo-

---

**28.** William D. Henderson, Comment, "Reconciling the Juridical Links Doctrine with the Federal Rules of Civil Procedure and Article III", 67 U.Chi.L.Rev., 1347, 1354 (2000); *see also* Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3531 at p. 407 (1984).

**29.** Henderson, Reconciling Juridical Links, *supra*, 67 U. Chi. L.Rev. at 1356.

**30.** Plaintiffs' Memorandum in Opposition to Motion to Dismiss, Rec. Doc. 75, p. 9.

bile home manufacturers. Private individuals such as the named and unnamed putative class members are clearly the intended beneficiaries of the Act. This legislation joins all of the manufacturers by common regulation, control and construction standards which *standardizes* the factual under-pinnings of the claims at issue herein and assures that any defenses that the defendants may have will be common to all parties.

Memorandum in Opposition to Motion to Dismiss, Rec. Doc. 75, p. 9 (emphasis in original). Plaintiffs add the novel argument that defendants—essentially the entire mobile home industry—conspired to conceal their long-time knowledge of the condensation and moisture problems with mobile homes, and that their actions constitute a violation of the Act.

Plaintiffs cite no support for their argument that regulation under a common statute, or similar actions *in violation* of statutory or regulatory provisions, establishes a "juridical link" between defendants. The undersigned has found no such authority after an extensive search. While other courts have applied the juridical links doctrine in limited cases, most often in Title VII, securities, or civil rights cases, the Fifth Circuit has not recognized the doctrine at all, in dicta or otherwise.

In some non-Fifth Circuit cases, the juridical link has been applied to private sector defendants by virtue of common agreements or practices followed by the group which are being *challenged* by the plaintiffs, but not where a statute or regulation meant to *benefit* plaintiffs has been allegedly violated by individual defendants.[31] In no case has a court applied the juridical links doctrine in a fact situation similar to that here presented.

For the foregoing reasons, the undersigned concludes that plaintiffs have failed to establish standing, and accordingly, there is no "case or controversy" which would empower this court to exercise its judicial authority. The "juridical links doctrine" is not relevant to the issue of standing, nor does it apply in this case to provide an exception to the requirements of "typicality" and "adequacy of representation" required by Rule 23(a).

### F. Prudical Aspects of Standing

■■■ Because plaintiffs fail to meet the constitutional requirements of standing, there is no need for the court to address the additional prudential requirements. It bears noting, however, that plaintiffs' attempt to bring a class action against defendants who have caused them no personal injury violates the first prudential principle: that a plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499, 95 S.Ct. 2197. It is clear that plaintiffs here seek to vindicate not their own rights, but those of third parties who may have suffered a concrete injury as a

---

**31.** A court which examined the doctrine as applied to private sector defendants found as follows:

It is evident from these citations that these cases have carved out an exception for defendant classes whose conduct is standardized by a common link to an agreement, contract or enforced system which acts to standardize the factual underpinnings of the claims and to insure the assertion of defenses common to the class. This "inde-pendent legal relationship" also mitigates the due process concerns latent in defendant class certifications, as its presence "denote[s] some form of activity or association on the part of the defendants that warrants imposition of joint liability against the group even though the plaintiff may have dealt primarily with a single member."

*Angel Music, Inc. v. ABC Sports, Inc.* 112 F.R.D. 70, 77 (S.D.N.Y.1986) (citations omitted).

result of the alleged defects in defendants' mobile homes.

Furthermore, to the extent that plaintiffs are alleging the existence of a national health threat due to uniformly defective mobile homes manufactured by a nationwide industry—an industry regulated by federal statute—such claims appear to violate the second prudential principle. Plaintiffs, in essence, are asking the court to "decide abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474–475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982) (*quoting Warth v. Seldin*, 422 U.S. at 499–500, 95 S.Ct. at 2205–06).

### G. Rule 12(b)(6) Motions: Failure to State a Claim

The Rule 12(b)(6) motions to dismiss for failure to state a claim will not be addressed, in accordance with Fifth Circuit jurisprudence. The Court instructs that when a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977) (*per curiam*).

> This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction.

**32.** Rec. Doc. 75, 85, 103, 189.

*Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir.(Tex.) 2001), *citing Hitt, supra.*

### H. Rule 12(b)(2) Motions to Dismiss for Lack of Personal Jurisdiction

Because dismissal is proper under Rule 12(b)(1), it is not necessary to address the factually distinct motions to dismiss for lack of personal jurisdiction. *Ruhrgas AG v. Marathon Oil*, 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir.2000), *relying on Ruhrgas, supra.*

### I. Delay and/or Amendment

Plaintiffs ask the court to delay ruling on the standing issue, citing the difficulty of leveling specific allegations against specific defendants because individual plaintiffs may have "indirectly" purchased one of their mobile homes through a transaction not reflected in defendants' business records.[32] In a footnote, plaintiffs state that "unlike automobiles, most mobile homes look alike and it is often difficult to determine the identify the identify of the manufacturer."[33] This argument might be persuasive except for the fact that identification of the makers of the particular mobile homes owned by the named plaintiffs is the least of their problems. Because the named plaintiffs have failed to make even a prima facie showing of specific injury as a result of the alleged defects in the mobile homes, and make no allegations of a causal connection between any injury and the alleged defects, a delay would be of no benefit to plaintiffs.

It is within the trial court's power to allow or to require plaintiffs to amend the complaint or submit affidavits in order to supply "further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth v. Seldin, supra*, 422 U.S. at 501–502, 95 S.Ct. 2197.

**33.** Rec. Doc. 75, 85, 103, 189.

"If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." *Id.* at 502, 95 S.Ct. 2197.

In the instant case, plaintiffs have had many opportunities to correct the defects in the complaint or to further particularize the allegations of fact, but they have not done so. The first of seventeen motions to dismiss was filed on March 7, 2002 (Rec. Doc. 36) and the last was filed on November 22, 2002 (Rec.Doc. 184). Almost all of the motions alleged plaintiffs' lack of standing or failure to state a claim. Plaintiffs had seventeen opportunities to bolster their claims with concrete, particularized. non-hypothetical allegations of injury. Plaintiffs filed four "in globo" oppositions, none of which contain the necessary allegations.[34] Several defendants also filed joint motions with plaintiffs to dismiss their case without prejudice.[35] The district judge set all of the pending motions for hearing on April 18, 2002.[36] On April 1, 2002, plaintiffs filed a motion for leave to file a supplemental and amending complaint to add additional plaintiffs and a defendant, discussed above.[37] The court denied the motion to amend on October 21, 2002 and granted the multiple joint motions to dismiss without prejudice on August 9, 2002.[38]

At the April 18 hearing on defendants' motions to dismiss, the district judge ordered plaintiffs' counsel to submit a memorandum setting forth the reasonable inves-

tigation he made before filing plaintiffs' state court petition in St. Landry Parish. Plaintiffs sought relief from this order in the trial court and in the Fifth Circuit, which ordered, on September 12, 2002, the district court to retain the investigation file papers under seal.[39] Meanwhile, four additional defendants filed motions to dismiss under Rule 12.[40]

On October 1, 2002, the district judge ordered plaintiffs' counsel to advise the court and opposing counsel which motions he opposes.[41] In response, plaintiffs submitted a letter to the court advising that they opposed all motions and re-urged their request to conduct jurisdictional discovery.[42] Thereafter, on November 22, 2002, yet another defendant filed a motion to dismiss under Rule 12(b)(6).[43] On December 11, plaintiffs filed an opposition to this motion.[44]

The undersigned has had the subject motions under advisement for several months due to the complexity of the issues presented. At no time have plaintiffs sought leave to amend the complaint to correct the deficiencies pointed out by the motions to dismiss.

In exercising its discretion to allow amended pleadings, the court may consider such factors as undue delay, prejudice to the opposing parties, and futility of the proposed amendment. *Cranberg v. Consumers Union of U.S., Inc.,* 756 F.2d 382 (5th Cir.1985), *citing Foman v. Davis,*

34. Rec. Docs. 75, 85, 103, 189.

35. Rec. Docs. 52, 55, 59, 61, 83.

36. Rec. Docs. 68, 69, 86.

37. Rec. Doc. 60. *See* pp. 8–9 *supra.*

38. Rec. Docs. 174, 177. Rec. Docs. 159, 160, 161, 162. The court's order dismissed Kit Manufacturing, Inc. and Homebuilders NW, Inc. Therefore, the Rule 12(b) motions filed by these defendants are no longer pending.

39. Rec. Doc. 169.

40. Rec. Doc. 141, 142.

41. Rec. Doc. 170.

42. Rec. Doc. 171, 173.

43. Rec. Doc. 184.

44. Rec. Doc. 189.

371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Gregory v. Mitchell,* 634 F.2d 199, 203 (5th Cir.1981). Considering these factors, and for the reasons discussed, there is no justification for allowing amendment of the pleadings.

### IV. CONCLUSION

For the foregoing reasons, it is recommended that the motions to dismiss be granted, and that plaintiffs' claims be dismissed in their entirety against all defendants.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), Fed.R.Civ. P., the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

■ **Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its receipt, or within the time frame authorized by Rule 6(b) Fed. R.Civ.P., shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir.1996).**

### APPENDIX, MOTIONS TO DISMISS FILED IN Civil Action 02-0380, Matte v. Sunshine Homes, et al.